SHEPHERD & PIERSON CO., Appellant, *v.* BAKER, Respondent.

BAKER, Respondent, *v.* SHEPHERD & PIERSON CO. et al., Appellants.

(No. 6,143.)

(Submitted November 29, 1927. Decided December 29, 1927.)

[262 Pac. 887.]

*Dower—Marriage—Evidence—Presumptions—Burden of Proof —Appeal—Findings—When Conclusive.*

Equity—Appeal—Extent of Review of Evidence.
   1. Since under section 9396, Revised Codes 1921, a motion for new trial on the ground of insufficiency of the evidence does not lie in an equity suit, the rule that the supreme court, in the absence of such a motion, will go no further than to determine whether there is any substantial evidence to sustain the decision of the court does not apply.

**Same—Findings—When Conclusive.**

2. In equity cases or proceedings of an equitable nature the supreme court, under section 8805, Revised Codes 1921, must review all questions of fact, as well as of law, and declare upon the rights of the parties accordingly, but will not reverse the decision of the trial court unless the evidence strongly preponderates against its findings; when the evidence furnishes reasonable ground for differing conclusions the findings will not be disturbed.

**Dower—Plaintiff has Burden of Establishing Existence of Valid Marriage.**

3. While the right of dower is favored in the law, the burden of establishing the existence of a valid marriage as the basis of that right rests upon the person asserting it.

**Marriage—Requisites.**

4. Proof of consent, followed by cohabitation and the bearing of children, coupled with reputation as man and wife, are not alone sufficient to establish marriage, but the parties must have been capable of contracting a marriage; hence where the woman at the time of an alleged common-law marriage had a husband living she was incapable of entering into the second contract.

**Same—Attack on Second Marriage—Presumption—Burden of Proof.**

5. Where a second marriage is attacked as invalid, the presumption is that the prior one was dissolved by death or a decree of divorce, and the burden of showing the contrary rests upon him who makes the attack, such presumption, however, being rebuttable.

**Adoption—Proceedings Judicial in Character—Decree Admissible in Evidence in Action for Dower to Prove That Mother had Husband Living at Time of Alleged Common-law Marriage.**

6. Proceedings for the adoption of a child are judicial in character; hence where a woman and her husband in their consent to the adoption of their daughter recited that they were husband and wife, the record in the proceeding was properly admitted in evidence in a subsequent action by the woman to establish her right to dower in the estate of the man adopting the child on the ground that at that time she was his common-law wife, as tending to show that she then had a husband living and was incapable of contracting the second marriage.

**Marriage—Relations Illicit in Inception Presumed to have Continued—Change in Relations—Burden of Proof.**

7. Where it is shown that a prior marriage was still in existence at the time of an alleged second common-law marriage, the relations of the parties to the latter were illicit in their inception and will be presumed to have continued so until the contrary is

---

2. See 2 R. C. L. 203.

3. See 9 R. C. L. 568.

4. Competency and sufficiency of evidence of marriage, see note in 57 Am. Rep. 451.

5. Presumption and burden of proof as to validity of subsequent marriage, see notes in 89 Am. St. Rep. 198; 17 Ann. Cas. 680; Ann. Cas. 1918E, 1233. See, also, 16 Cal. Jur. 934; 18 R. C. L. 428.

6. See 1 Cal. Jur. 428.

7. See 18 R. C. L. 436.

[81 Mont. 185.]

shown, the burden resting upon the party asserting the validity of the second to show that the illicit relations were changed to a lawful one by a marriage after the prior one was dissolved.

---

[1]  Appeal and Error, 3 C. J., sec. 851, p. 964, n. 96 New. Dower, 19 C. J., sec. 5, p. 458, n. 15.

[2]  Appeal and Error, 4 C. J., sec. 2867, p. 897, n. 81; sec. 2869, p. 899, n. 93, p. 900, n. 96.

[3]  Dower, 19 C. J., sec. 10, p. 460, n. 39; sec. 339, p. 568, n. 98.

[4]  Marriage, 38 C. J., sec. 45, p. 1295, n. 20; sec. 90, p. 1317, n. 15, p. 1318, n. 24.

[5]  Marriage, 38 C. J., sec. 97, p. 1321, n. 54; sec. 104, p. 1328, n. 86.

[6]  Adoption of Children, 1 C. J., sec. 50, p. 1383, n. 79; sec. 100, p. 1391, n. 96; sec. 113, p. 1393, n. 49.  Marriage, 38 C. J., sec. 114, p. 1343, n. 83.

[7]  Appeal and Error, 4 C. J., sec. 3230, p. 1192, n. 59.  Marriage, 38 C. J., sec. 103; p. 1328, n. 85; sec. 114, p. 1343, n. 81.

*Appeal from District Court, Hill County; Charles A. Rose, Judge.*

ACTION to quiet title by the Shepherd & Pierson Company against Rose Baker, who brought a cross-action against plaintiff and another.  From a judgment in favor of Baker, plaintiff and another appeal.  Judgment reversed and cause remanded, with direction.

*Messrs. O'Brien, Horn & Stringer,* of the Bar of St. Paul, Minnesota, *Messrs. Elwell & Kline, Messrs. Hurd, Rhoades & Hauge* and *Mr. C. A. Spaulding,* for Appellants, submitted an original and a reply brief; *Mr. Charles B. Elwell* and *Mr. George E. Hurd* argued the cause orally.

Assuming that Rose Trottier and Pepin cohabited and had children from 1883 to 1902, yet upon the admissions of both of the principals, their relationship was illicit, and such a relation, illicit in its inception, is presumed to so continue. (*Brokeshoulder* v. *Brokeshoulder,* 84 Okl. 249, 34 A. L. R. 441, 204 Pac. 284; *In re Richards,* 133 Cal. 524, 65 Pac. 1034; *Barnes* v. *Barnes,* 90 Iowa, 282, 57 N. W. 581; *Rose* v. *Rose,* 67 Mich. 619, 35 N. W. 802; *Re Hamilton,* 76 Hun, 200, 57 N. Y. 810, 27 N. Y. Supp. 813; *Northfield* v. *Plymouth,* 20 Vt. 582; *Howland* v. *Burlington,* 53 Me. 54; *Randlett* v.

*Rice,* 141 Mass. 385, 6 N. E. 238; 38 C. J. 1297, 1320, 1321
(secs. 96 and 97), 1328, 1332, 1339; 18 R. C. L. 420, 421.)
Even the death of Andrew Trottier would not change the rule.
(*Compton* v. *Benham,* 44 Ind. App. 51, 85 N. E. 365; *Williams*
v. *Williams,* 46 Wis. 464, 32 Am. Rep. 722, 1 N. W. 98; *Cart-
wright* v. *McGown,* 121 Ill. 388, 2 Am. St. Rep. 105, 12 N. E.
737; *Randlett* v. *Rice,* 141 Mass. 385, 6 N. E. 238; *Beck* v.
*Utah-Idaho Sugar Co.,* 59 Utah, 314, 203 Pac. 647; *Cram* v.
*Burnham,* 5 Greenl. (Me.) 213, 17 Am. Dec. 218; *Turpin* v.
*Public Admr.,* 2 Bradf. Sur. (N. Y.) 424; *Harbeck* v. *Harbeck,*
102 N. Y. 714, 7 N. E. 408.)

The fact that Pepin always regarded himself as an unmarried
man in passing title to property by deed, contradicts the idea
of any marriage by mutual consent or otherwise. (*Matter of
Seymour,* 113 Misc. Rep. 421, 185 N. Y. Supp. 373.) The
record affirmatively shows that they did not live as husband
and wife. Pepin occupied one house and Rose another.

Mere occasional cohabitation, where the parties live separate,
is insufficient, even though the man contributes to the support
of the woman and refers to her as his wife. (*O'Malley* v.
*O'Malley,* 46 Mont. 549, Ann. Cas. 1914B, 662, 129 Pac. 501.)
By marital cohabitation is not meant simply the gratification
of sexual passions, but to live or dwell together, to have the
same habitation, so that where one lives and dwells there does
the other live and dwell also. (*O'Malley* v. *O'Malley,* supra;
*Hinckley* v. *Ayres,* 105 Cal. 357, 38 Pac. 735.) Cohabitation
requires as its chief element a constancy of dwelling together.
(*Yardley's Estate,* 75 Pa. 207.)

The fact is that marriage may, of course, be established by
reputation, but such reputation must be uniform. If it is
divided it amounts to no evidence at all, and must be rejected.
(*Hite* v. *Hite,* 124 Cal. 389, 71 Am. St. Rep. 82, 45 L. R. A.
793, 57 Pac. 227; *Arnold* v. *Chesebrough,* 58 Fed. 833, 7
C. C. A. 508; *Taylor* v. *Taylor,* 10 Colo. App. 303, 50 Pac.
1049; *Gorden* v. *Gorden,* 283 Ill. 182, 119 N. E. 312; *In re
Boyington,* 157 Iowa, 467, 137 N. W. 949; *Jackson* v. *Jackson,*
80 Md. 176, 30 Atl. 752; *Weatherall* v. *Weatherall,* 63 Wash.

526, 115 Pac. 1078; *Eldred* v. *Eldred,* 97 Va. 606, 34 S. E. 447; 38 C. J. 1324.)

Pepin declared to Broadwater, his partner, and to Ed. Allen, a lawyer and conveyancer, that he was unmarried. Such declarations are admissible to rebut any presumption of marriage. (*In re Colbert's Estate,* 51 Mont. 455, 466, 153 Pac. 1022; *Madison* v. *Steckleberg,* 101 Okl. 237, 224 Pac. 961; *Beck* v. *Sugar Co.,* 59 Utah, 314, 203 Pac. 647; *Henry* v. *McNealey,* 24 Colo. 456, 50 Pac. 37; *In re Paulson,* 179 Cal. 528, 178 Pac. 143; *Barnum* v. *Barnum,* 42 Md. 251; *In re Taylor,* 9 Paige Ch. (N. Y.), 611; *Young* v. *Shulenberg,* 165 N. Y. 385, 80 Am. St. Rep. 730, 59 N. E. 135; *Hammond* v. *Hammond,* 43 Tex. Civ. App. 284, 94 S. W. 1067; *Fulkerson* v. *Holmes,* 117 U. S. 389, 29 L. Ed. 915, 6 Sup. Ct. Rep. 780 [see, also, Rose's U. S. Notes]; 38 C. J. 1336, 1337; 22 C. J., sec. 227; *Marshall* v. *Carr,* 275 Pa. 86, 118 Atl. 621; 18 R. C. L. 425.)

*Messrs. Wheeler & Baldwin* and *Mr. C. R. Stranahan,* for Respondent, submitted an original and a supplemental brief; *Mr. James H. Baldwin* argued the cause orally.

It is true that if a prior marriage is shown to have existed at the time of the second marriage, the burden of proving a remarriage to the second spouse after the dissolution of the first by death or divorce rests on the party asserting the validity of the second marriage, but wherever a marriage has been established, there is a presumption in favor of its validity. It will not be overthrown by proof of a prior marriage; the presumption of innocence overcomes the presumption of the continued existence of the prior marriage. This presumption arises because the law presumes morality, and not immorality, and every intendment is in favor of matrimony.

In the case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage. Even where the first marriage is established it may be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved either by death or by a decree of divorce, so as to cast the burden of adducing

evidence to the contrary on the party attacking the second marriage, and the burden of proof is upon the person attacking the validity of the second marriage, which can only be sustained by the person attacking the validity of the second marriage proving that at the time it was consummated, the first marriage had not been dissolved either by death or divorce. The presumption of the dissolution of the prior marriage is adduced in favor of a subsequent common-law marriage, and every presumption will be adduced in favor of the legality of a common-law marriage in the same way and to the same extent as the law indulges them in favor of a ceremonial. This is based partly upon the law's favorable presumption of innocence and partly upon the concern of the law for the legitimacy of offsprings and the integrity of the family. (*Hadley* v. *Rash,* 21 Mont. 170, 173, 69 Am. St. Rep. 649, 53 Pac. 312; *In re Houston's Estate,* 48 Mont. 524, 528, 139 Pac. 458; *Welsh* v. *All Persons,* 78 Mont. 370, 254 Pac. 179.) Appellants failed utterly to make this proof.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Simon Pepin died testate in 1914; he devised large tracts of land in Hill, Blaine and Cascade counties to his adopted daughter, Elizabeth Pepin, and bequeathed the sum of $5,000 to her in trust for the maintenance of "Rose Trottier, the mother of said Elizabeth Pepin." Elizabeth Pepin became the wife of Frank H. Meyer prior to the death of Simon Pepin. Pepin's will was probated and his estate settled, and thereafter Elizabeth Meyer conveyed a considerable portion of the Pepin lands to the Shepherd & Pierson Company.

Rose Trottier cohabited with, and was supported by, Simon Pepin for more than thirty years prior to his death; in 1921 she married one Frank Baker. In 1923 the Shepherd & Pierson Company commenced this action against her to quiet title to the lands above mentioned and, in its complaint, alleged that she claimed some interest in the lands but without right or title thereto.

By answer and cross-complaint Rose Baker alleged that she and Simon Pepin intermarried about the year 1890 and that, as his widow, she was entitled to be endowed of the one-third interest in the lands described in the complaint and in other lands described in the cross-complaint, and had theretofore been prevented from asserting her right by the fraud, menace, coercion and undue influence of Elizabeth Meyer, of which the officers of the plaintiff company had full knowledge at the time it took title to the lands described, and further alleged that the conveyances to the plaintiff were made without consideration. In addition to the recovery of a dower interest in the lands, the cross-complaint asked damages against Elizabeth Meyer in the sum of $50,000 and asked that she be made a party defendant. Substituted service was made upon Elizabeth Meyer, then a resident of St. Paul, Minnesota; she appeared specially and moved to quash the service on the ground that such service was not sufficient in an action such as that stated in the cross-complaint, but her motion was overruled, and she and the plaintiff then joined issue as to the facts alleged in the cross-complaint.

The cause was tried to the court without a jury and a voluminous record made, the testimony adduced bearing chiefly upon the question as to whether Simon Pepin and Rose Trottier were ever married; and in due time the court made findings of fact in favor of Rose Baker on all of the issues joined, concluded as a matter of law that she was entitled to dower, and entered its judgment and decree in accordance with the findings of fact and conclusions of law. The plaintiff and Elizabeth Meyer appealed separately, but filed a joint transcript and joint brief. They made twenty-four assignments of error, of which those necessary to an opinion will be noted as we proceed.

1. It is not contended that Simon Pepin and Rose Trottier entered into a ceremonial marriage, but it is asserted that in the year 1890 they openly and publicly agreed to become husband and wife and immediately thereupon publicly assumed the marital relation and deported themselves as such, and,

from the evidence adduced, the court so found, and further found that they were generally reputed to be, and recognized as, man and wife. On these findings the court based its conclusion that Rose Baker was entitled to be endowed of the one-third of the real property mentioned in its findings.

These findings and conclusions were essential to the validity of the judgment and decree entered, as dower is the interest which the statute gives a widow in lands whereof her husband was seised of an estate of inheritance at any time during their marriage, unless the same shall have been relinquished in legal form. (Sec. 5813, Rev. Codes 1921; *Mathews* v. *Marsden,* 71 Mont. 502, 230 Pac. 775.)

The sufficiency of the evidence to sustain the above findings, conclusions of law and judgment and decree is challenged by specifications numbered 12, 18 and 19.

2. Counsel for Rose Baker contend that, as no motion for a [1] new trial was made, a review of the evidence can extend no further than to determine whether there is any substantial evidence to sustain the decision of the trial court, citing *State* v. *Welch,* 79 Mont. 614, 257 Pac. 1010, and *Watts* v. *Billings Bench Land & Water Co.,* 78 Mont. 199, 253 Pac. 260. Counsel, however, overlook the fact that this is an equity case tried to the court without a jury, while the cases cited were tried to a jury, the first being a criminal prosecution, and the second an action at law for damages. The rule therein announced has no application to the case at bar for the following reasons:

Section 9396, Revised Codes of 1921, declares: "No new trial shall be granted in equity cases, or in cases tried by the court without a jury, except on the grounds mentioned in the first, third, and fourth subdivisions of section 9397." "Insufficiency of the evidence to justify the verdict or other decision * * * " is the sixth subdivision of the section; therefore a motion for a new trial on that ground was not available to the losing parties herein (*Morrow* v. *Dahl,* 66 Mont. 251, 213 Pac. 602; *Davenport* v. *Davenport,* 69 Mont. 405, 222 Pac. 422; *Merhar* v. *Powers,* 73 Mont. 451, 236 Pac. 1076), and the re-

striction upon a review of the evidence does not attach by reason of failure to so move.

3. The rules applicable here are that, in equity cases or in [2] proceedings of an equitable nature, this court must review all questions of fact arising upon the evidence presented and determine the same, as well as questions of law, and declare upon the rights of the parties according thereto (sec. 8805, Rev. Codes 1921) with due regard to the findings of the trial court (*Davenport* v. *Davenport,* above; *Nolan* v. *Benninghoff,* 64 Mont. 68, 208 Pac. 905), and will not reverse the decision of the trial court unless the evidence strongly preponderates against its findings, and when the evidence furnishes reasonable ground for differing conclusions, such findings will not be disturbed (*Kummrow* v. *Bank of Fergus County,* 66 Mont. 434, 214 Pac. 1098; *Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451; *Thomas* v. *Standard Dev. Co.,* 70 Mont. 156, 224 Pac. 870; *Williard* v. *Campbell Oil Co.,* 77 Mont. 30, 248 Pac. 219), but this court will not hesitate to set aside findings contrary to the preponderance of the evidence, and it is its duty to do so (*Giebler* v. *Giebler,* 69 Mont. 347, 222 Pac. 436).

4. We must therefore review all of the evidence appearing in the record and bearing upon the decisive question of marriage in order to determine where lies the decided preponderance of the evidence.

The law relative to nonceremonial marriages was carefully considered and succinctly stated by Mr. Chief Justice Callaway in the case of *Welch* v. *All Persons,* 78 Mont. 370, 254 Pac. 179, and, where applicable, the rules there laid down will be stated herein without further discussion or the citation of further authorities.

5. The right of dower is favored in the law (*Mathews* v. [3] *Marsden,* above), but the burden of establishing a valid marriage as the basis of that right, of course, rests upon the person asserting it. (Sec. 10616, Rev. Codes 1921.) Counsel for Rose Baker assumed this burden and sought to establish a nonceremonial marriage by mutual agreement, consent and

assumption of the marital relationship and by continued public cohabitation thereafter and reputation as man and wife.

The testimony of Rose Baker in her own behalf is rather unsatisfactory, owing to the fact that she is a Cree Indian, with no education and little knowledge of the English language, yet she attempted to testify on direct examination without an interpreter. Many of the questions propounded to her by her counsel were answered by the simple affirmative, "Yes," whether that answer was appropriate or not; thus, after answering the question as to whether she had lived with Simon Pepin by a "Yes," she was asked, "What, if anything, did he say to you about living with you as your husband and you living with him as his wife?" and again her answer was, "Yes." After several such answers the court suggested to counsel that he inquire as to whether she was ever married; whereupon she was asked, "Did you marry Simon Pepin?" to which she replied, "No get married; I stay with him." She was then asked, "What did he say to you about being your husband?" to which she answered, "Yes; he told, 'My Wife, and I stay with you as long as you live'; I stay with him all the time." She further testified that she agreed to this suggestion of Pepin, and lived with him until his death, bearing him four children, of whom Elizabeth Meyer was one, and that Pepin claimed them as his own. All of these children, with the exception of Elizabeth, died in infancy.

One Ed. B. Thomas testified that he came to old Ft. Assinniboine as a "scout" in 1883, and that he at some time during the following winter attended "quite a party" at which another scout, without authority or license issued, performed a ceremony by which he pretended to unite Simon Pepin and Rose Trottier in the bonds of matrimony, which ceremony was performed in the presence of a large number of people, and thereupon the two took up their residence and lived together as man and wife in one of the houses at the fort.

Supplementing this testimony, many witnesses testified that, after removing to Havre in 1891 or 1892, the two deported themselves as husband and wife, and Pepin held Rose out to

the world as his wife, lived with her, and supported her and her children, although many of her witnesses stated that she lived in a small house on the rear of the lot, while Pepin had a large house in front thereof in which he lived with certain of his relatives; while many witnesses called by Elizabeth Meyer testified that Rose was not known as Mrs. Pepin, but as Rose Trottier. Elizabeth Meyer testified that Pepin never referred to Rose as his wife in conversation with the witness and his partner for years, E. T. Broadwater; and Ed. M. Allen, an attorney, testified that Pepin invariably acknowledged conveyances as a single man, and, it will be noted that, in his will, Pepin referred to the woman as "Rose Trottier," and not as his wife.

If consent, followed by cohabitation and the bearing of [4] children, coupled with reputation as man and wife, was sufficient to constitute marriage, we might be constrained, in the light of the situation of the parties and that justice might be done, to uphold the findings of the trial court, in spite of the division as to reputation, which is said to destroy the probative force of the testimony (*In re Boyington's Estate,* 157 Iowa, 467, 137 N. E. 949, and cases there cited), and the rule announced in *Welch* v. *All Persons,* above, that, as every marriage must have been entered into at some particular time, having alleged the time, the party asserting the marriage cannot prove that it took place at some other time, on the theory that reputation is important only as bearing upon the intention of the parties in living together (*Cross* v. *Cross,* 55 Mich. 280, 21 N. W. 309), and that, although Thomas placed the date of the marriage some seven years prior to the date alleged and fixed by the woman, they referred to the same consent and acts of the parties, and Thomas, and not Rose, was mistaken as to the date, for the presumption of marriage is one of the strongest known to the law (*Welsh* v. *All Persons,* above).

5. However, proof of those facts alone is not sufficient to establish a marriage. *Welsh* v. *All Persons,* above.

6. There must be the mutual consent, at the time of entering into the relation, of two persons capable of consenting. This

is not only sound fundamental doctrine, but it was so declared by solemn statutory enactment in force at the time these parties are alleged to have become husband and wife.

In 1864 it was declared in this state that: "Marriage, as far as its validity is concerned, is a civil contract, to which the consent of the parties capable in law of contracting is essential." (Bannack Statutes, p. 408, sec. 1.) This enactment was carried forward into the Codified Statutes of 1871 (p. 520, sec. 1), and the Revised Statutes of 1879 (p. 587, Div. 5, sec. 854), and was amended in 1887 to read: "Marriage is a civil contract to which the consent of the parties capable in law of contracting is essential." (Comp. Stats. 1887, Div. 5, sec. 1411.) This declaration remained the law on the subject until 1895, when the more accurate definition, that "marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary," was adopted, to which was then added: "Consent alone will not constitute marriage; it must be followed by a solemnization, or by a mutual and public assumption of the marital relation." (Civ. Code 1895, sec. 50.) This definition is now found in section 5695 of the Revised Codes of 1921.

It is therefore apparent that, whether the pretended marriage took place in 1883, 1884, 1890 or 1891—the testimony being insufficient to show either of those dates positively—not only reason, but the law, required that, in order to consummate a valid marriage, both parties must have been capable of contracting such marriage, and it needs no citation of authority to the effect that a married woman is incapable of contracting, in this respect, even in the absence of statutory declaration to that effect such as we now have in section 5705, Revised Codes 1921.

7. On cross-examination, Rose Baker was furnished with an interpreter and there can therefore be no allowance made, in considering her testimony on cross-examination, for the fact that she did not understand the language in which the questions propounded to her were couched. Here, by her own admissions and without dispute in the record, it was established

that she legally married one Andrew Trottier at Cypress, Northwest Territory, on August 12, 1882; that she had at least two children as issue of the union and was brought to Ft. Assinniboine by Trottier who there worked for Pepin.

So solicitous is the law for the protection of the marriage [5] relation and the legitimacy of children that, even in this situation, the presumption arises that the prior marriage shown was dissolved by death or decree of divorce prior to the second marriage, and the burden rests upon the person attacking the second marriage to show the contrary. (*Welsh* v. *All Persons,* above.)

8. This presumption, however, is rebuttable and must give way to established facts. The record shows conclusively that Andrew Trottier was alive as late as 1911, thus effectually rebutting the presumption of death. As to the presumption of divorce, the testimony of Rose Baker is pregnant with the admission that, in her ignorance, she believed that all that was necessary in order to get rid of a husband was to leave him, and that this was all she did in order to "stay with" Simon Pepin; she made no attempt to show that she had ever been legally separated from Trottier, even after the introduction of the testimony next considered.

9. On cross-examination, Rose Baker was asked if she did not, on November 23, 1892, commence divorce proceedings against Andrew Trottier at Ft. Benton, reciting in her sworn complaint that the two were then husband and wife, to which she replied, through her interpreter: "Mr. Trottier was the one who applied for the divorce; asked me to give the divorce." She was then asked if she did not, about a year and a half later, dismiss the proceeding, but replied that she did not. Opposing counsel then sought to introduce the files and record in the proceeding and the offer was later made at several stages of the trial, but the records were excluded by the court. Error is predicated upon the rulings of the court in excluding the records of the divorce proceeding. The court's reason for doing so is not quite clear, but counsel for Rose Baker contend that no error was committed, as the complaint in the action

was not properly verified and that the signature of the woman, made by mark, was not properly proved. With the evidence in the record, above recited, and that which follows, we do not deem it necessary to determine whether or not the files in the divorce proceeding should have been admitted.

A witness, who was a deputy sheriff in 1892, was permitted [6] to testify that in that year he served papers in the divorce proceedings upon Andrew Trottier or Rose Trottier. It was then shown, without contradiction, that in 1902 the woman, with Andrew Trottier, Simon Pepin, and the girl, Elizabeth, went to the county seat for the purpose of permitting Simon Pepin to adopt the girl as his daughter, and there Andrew Trottier and Rose Trottier joined in a written consent to the adoption, therein reciting that they were husband and wife and the parents of the child; Rose was examined by the presiding judge in the absence of her husband, and so answered the questions propounded to her as to convince the court of the truth of the statements made in the petition for adoption and the written consent thereto given and justify it in reciting in the order of adoption that Rose Trottier and Andrew Trottier were wife and husband at that time. On cross-examination, Rose was asked if she did not tell the judge when questioned in the adoption proceeding that she was the wife of Andrew Trottier; her reply was that she told the judge: "I was his wife, but I quit him a long time ago; I haven't slept with him for a long time."

Counsel for Rose Baker contend that the court erred in admitting this record, on the ground that it was not a judicial proceeding or, if it was, that the record shows that the court was without jurisdiction by reason of omissions in the petition and in the order of adoption. These contentions were, however, disposed of in the opinion of this court rendered in the *Matter of the Pepin Estate,* 53 Mont. 240, 163 Pac. 104, where it is held that it was a judicial proceeding binding on all parties concerned, and was had in apparent conformity with the statutory provisions then in effect, and that the order was a decree valid on its face and not subject to collateral attack.

10. The showing thus made, without considering the files in [7] the divorce proceeding, was, in our opinion, sufficient to establish the fact that the prior marriage was still in existence at the time Rose Trottier went to live with Simon Pepin, and therefore their relations were, in their inception, illicit. Such a relation being shown, it is presumed to continue until the contrary is shown, and the burden rests upon the party asserting the validity of the second marriage to show that the illicit relation changed to a lawful one by a remarriage after the prior marriage has been dissolved. (*Welsh* v. *All Persons,* above.) This counsel for Rose Baker did not attempt to do; nor could they have done so in this case except by showing a divorce decree entered after the year 1902, at which time Trottier was shown to have been the husband of the woman; he lived up to within two or three years of the death of Simon Pepin; the marriage is alleged to have been consummated in 1890, and, under the pleadings, a marriage after the death of Trottier could not have been proved (*Welsh* v. *All Persons,* above), had it been so consummated.

It is, however, clear from the record that there was no attempted marriage at any time other than as alleged. The parties having introduced all of the testimony which could have been produced, it is our duty to dispose of the case finally on the record, and thus end the litigation.

The evidence as to this controlling question, in its final analysis, preponderates so strongly against the findings of the trial court that it entirely overcomes all of the presumptions favorable to a marriage and completely destroys the prima facie case made by showing an agreement to marry, followed by immediate cohabitation, for it is clearly shown that the woman could not then contract a marriage.

As the question of marriage disposes of the case, we need not consider the many additional questions raised in the record.

The findings that Rose Trottier and Simon Pepin were married in 1890 and were man and wife at the time of his death, with the conclusion therefrom that Rose Baker is entitled to dower, are set aside, the judgment and decree reversed and the

cause remanded to the district court of Hill county, with directions to enter decree in favor of the plaintiff in accordance with the prayer for relief contained in its complaint.

*Remanded, with directions.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and GALEN concur.