NUHN, Respondent, *v.* NUHN, Appellant.

(No. 7,250.)

(Submitted September 27, 1934. Decided October 22, 1934.)

[37 Pac. (2d) 571.]

*Mr. Leon L. Wheeler,* for Appellant, submitted a brief; Mr. *Dan McCutchen,* of the Bar of Belle Fourche, South Dakota, of Counsel, argued the cause orally.

*Mr. Rudolph Nelstead,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action to secure a divorce and a judgment for permanent alimony, costs and attorneys' fees. The complaint contains two causes of action, one alleging desertion

and the other extreme cruelty. The defendant answered, denying generally the allegations of the complaint, with the exception of the allegation as to the marriage. He also, by cross-complaint, sought divorce on the ground of desertion.

The cause was tried before the court sitting without a jury. Plaintiff produced testimony in support of the allegations of both causes of action. The defendant did not appear in person on the trial, and produced no evidence in support of the allegations of his cross-complaint. He was represented by counsel on the trial. The only evidence offered in his behalf was with reference to his property and the amount of indebtedness owing by him.

The court made findings in favor of the plaintiff to the effect that both causes of action were sustained by the evidence, and that the value of defendant's property was $35,000. Judgment was entered awarding plaintiff a divorce, and a judgment against the defendant for $20,000 permanent alimony, $500 attorneys' fees and costs. The appeal is from the judgment.

The only error urged on this appeal is that the allowance to the plaintiff in the sum of $20,000 as alimony was excessive and should be reduced.

Plaintiff and defendant intermarried in the year 1911. They have only one child, a boy, the issue of this marriage, who at the time of the trial was twenty-one years of age. It appeared that following their marriage they resided in Montana, and, after a few years, removed to the state of Missouri, suffered financial reverses, and in 1921 returned to Montana, where at that time defendant embarked in the business of raising sheep. His father at that time sold him approximately 3,000 sheep at $10 per head. Defendant was without funds with which to pay the purchase price of the sheep. He continued in this business until the commencement of this action.

At the time of the trial defendant owned approximately 5,000 ewes, 1,500 lambs, 14 head of cattle, farming machinery, and approximately 5,000 acres of land in the southeastern

portion of Carter county. Evidence was received on the trial as to the value of this property. It was conceded by witnesses on behalf of the plaintiff that there was no ready market for the land at that time; an opinion, however, was expressed by them as to its value, based upon knowledge and experience. There is no complaint here made as to the finding of the court with reference to the value of this property. Plaintiff had resided with defendant from the time of their marriage until the month of October, 1931.

The father of the defendant testified that the defendant was then indebted to him in the sum of $38,000; that after the return of his son from the state of Missouri in 1921, he sold sheep to him for the sum of $30,000, and that from time to time his son had borrowed money from him, so that the state of the indebtedness at the time of the trial was as testified by him. This indebtedness was then secured by a chattel mortgage dated December 26, 1931, filed on August 12, 1932. This mortgage described all the cattle, horses, sheep, hay and feed, the property of the defendant. The mortgage was executed about one week after the defendant deserted plaintiff.

The father testified that the original indebtedness was also secured by mortgage. A satisfaction of an earlier mortgage between these parties was received in evidence, but the mortgage thus satisfied was not produced in evidence. The first mortgage in point of time which was offered and received at the trial, and executed by the defendant in favor of his father, bears date of January 7, 1924, being filed in the office of the county clerk of Carter county on January 25, 1924. A like mortgage was executed by the defendant to his father on January 8, 1930, and filed on the twenty-ninth day of January of that year in the office of the county clerk.

On October 14, 1930, the father of the defendant, the mortgagee in the last-named mortgage, executed and acknowledged a satisfaction of that mortgage, wherein it was recited, after describing the mortgage, that "the said mortgage together with the debt secured thereby, is hereby fully paid, satisfied and discharged." This satisfaction was filed in the office of the

county clerk on October 18, 1930. The mortgage thereby discharged described all the sheep and increase, the property of the defendant.

Plaintiff testified that in the fall of 1929 she had a conversation with her husband, wherein she inquired of him—because of a remark made by his father to her—as to the payments made by her husband on the sheep, and that her husband told her he had paid his father everything he owed, and that he did not owe him "a dime."

If the testimony of the father as to the existence of this indebtedness is to be believed, and if we consider the valuation of the unencumbered property to be as testified by plaintiff's witnesses, the value of this property was $13,610. The value of the property enumerated in the mortgage to Nuhn, Sr., as testified by plaintiff's witnesses, was $21,390.

Counsel for the defendant argue that in determining the amount of alimony to be awarded, the obligations or debts of the husband should be considered and deductions made from his income or property therefor, so that the rights of creditors may be protected. (19 C. J. 256.) Counsel for the plaintiff concede the correctness of the rule for which defendant contends.

The trial court made no express finding with reference to the indebtedness owing by the defendant to his father. The evidence on the subject of indebtedness offered by both sides was received by the trial court without objection.

Plaintiff contends that since no special finding was made on the subject of indebtedness, of necessity the trial court must have found that none existed, as otherwise the amount of the award would exceed the value of the unencumbered property of the defendant, the encumbered property described in the chattel mortgage being worth far less than the amount of indebtedness secured thereby. Defendant urges that there were no allegations in plaintiff's complaint with reference to the last chattel mortgage being fraudulent, that no issue was raised on the question by the pleadings in the case, and that therefore no finding could be implied on this question.

Neither party made any request that the court make any findings on the question of the validity of the indebtedness between Nuhn, Sr., and the defendant. In the absence of express findings, or request therefor, every finding necessary to support the judgment of the court will be implied. (*Sawyer* v. *Somers Lumber Co.,* 86 Mont. 169, 282 Pac. 852; *Blackwelder* v. *Fergus Motor Co.,* 80 Mont. 374, 260 Pac. 734; *Polich* v. *Severson,* 68 Mont. 225, 216 Pac. 785; *Edwards* v. *Muri,* 73 Mont. 339, 237 Pac. 209.)

The rule is, as stated by this court: "Where evidence, which might have been excluded as not tending to reflect upon any issue made by the pleadings, has been admitted without objection, it will be given the same consideration as though fully warranted by the pleading of the party offering the evidence, or, in other words, the pleading will be treated as if it had been amended to admit the introduction of the evidence." (*Lackman* v. *Simpson,* 46 Mont. 518, 129 Pac. 325; *Kelly* v. *Gullickson,* 75 Mont. 66, 241 Pac. 623.) To the same effect, see *Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071; *Capital Lumber Co.* v. *Barth,* 33 Mont. 94, 81 Pac. 994. Therefore the court was at liberty to consider the evidence on the question of indebtedness, and to make an appropriate finding regarding the same; and a finding will be implied, under the facts and circumstances of this case, to support the judgment, if the evidence in the record warrants such implication.

The only evidence tending to support the implied finding is the testimony of the plaintiff as to the statement made by her husband in the fall of 1929, to the effect that he owed his father nothing, and the further fact that the mortgage securing the indebtedness was satisfied of record by Nuhn, Sr., on October 18, 1930, wherein it was recited that the debt secured thereby was fully paid, satisfied and discharged. The effect of this acknowledgment was of no more binding force than an ordinary receipt for money paid. The general rule is that a written receipt for the payment of money is not conclusive, but is open to explanation by parol or extrinsic evidence. (Jones on Evidence, 2d ed., 2985; *Hennessy* v. *Ken-*

*nedy Furniture Co.*, 30 Mont. 264, 76 Pac. 291.) If the receipt is a contractual obligation, the rule is otherwise.

There is likewise the additional circumstance that from the filing of the satisfaction of the chattel mortgage on October 18, 1930, until the execution of the mortgage on December 26, 1931, the livestock, the property of the defendant, was unencumbered. The last mortgage was given after the desertion of plaintiff by the defendant. Nuhn, Sr., testified that he did not then know of any difficulty between the plaintiff and defendant. He likewise testified that the indebtedness was a valid and subsisting indebtedness. Furthermore, there is the testimony of the conversation which took place in the presence of plaintiff between the defendant, his father and a wool buyer on May 24, 1930, wherein inquiry was made by the buyer as to whether the sheep were mortgaged. He was informed that they were not mortgaged, although the release of the then existing mortgage was not executed and filed until October following.

Thus it will be seen that the evidence was conflicting on the question of the validity of this indebtedness. The trial court had the advantage of seeing and hearing the witnesses, and of observing their demeanor and manner of testifying, and was therefore in a more advantageous position in determining the credibility of the witnesses than are we. (*Dockins* v. *Dockins,* 82 Mont. 218, 266 Pac. 398, and cases there cited.)

This court will not reverse the decision of the trial court in an equity case upon questions of fact, unless the evidence strongly preponderates against its findings; and when the evidence furnishes grounds for different conclusions, such findings will not be disturbed. (*Shepherd & Pierson Co.* v. *Baker,* 81 Mont. 185, 262 Pac. 887; *Kummrow* v. *Bank of Fergus County,* 66 Mont. 434, 214 Pac. 1098; *Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451; *Thomas* v. *Standard Development Co.,* 70 Mont. 156, 224 Pac. 870; *Williard* v. *Campbell Oil Co.,* 77 Mont. 30, 248 Pac. 219.) The evidence in this case does not clearly preponderate against the implied finding of the trial court.

In *Cummins* v. *Cummins,* 59 Mont. 225, 195 Pac. 1031, we quoted with approval from Nelson on Divorce and Separation, section 908, as follows: "There is no absolute rule for determining the amount which the wife should receive when an absolute divorce is rendered. It is not a proposition of the husband's income or of his property. The amount is to be determined by the equities of the case and the financial condition of the parties."

The allowance of money in a lump sum as alimony to the wife is authorized by our statute. (*Cummins* v. *Cummins,* supra; *Bristol* v. *Bristol,* 65 Mont. 508, 211 Pac. 205.) The awarding of alimony by a trial court is in a large measure discretionary. (*Bristol* v. *Bristol,* supra.)

The court below in this case awarded plaintiff a sum in excess of one-half the value of defendant's property as found by the court. She was awarded a greater sum than she would have inherited upon his death. By a supplemental transcript filed in this court, it is disclosed that the total money judgment as rendered herein on August 15, 1933, was the sum of $20,719.20; also, that of this sum all had been paid, as disclosed by the return on execution made September 25, 1933, except the sum of $4,611.53. Plaintiff has received her costs and attorneys' fees, and approximately $15,400 on her judgment for permanent alimony. The amount actually received is in excess of one-third of the value of all of defendant's property, as found by the court, and somewhat less than one-half of said sum. No inflexible rule can be formulated to determine the amount to be awarded as permanent alimony in all cases. Each case must depend upon its own particular facts and circumstances. In view of the facts in this case, where there are no minor children to be supported, and where the amount of property involved is more than nominal, we think the award of the court was excessive, and the judgment should be modified.

We appreciate that the evidence offered on behalf of plaintiff in support of her causes of action for divorce discloses a most flagrant disregard on the part of the defendant of his

marriage vow, and that his conduct was such as greatly to humiliate the plaintiff. In such a situation it is indeed difficult for a trial court or an appellate court to refrain from allowing a judgment for alimony to partake somewhat of the nature of a penalty, as the nature and character of the testimony is such as is likely to create in the unbiased mind an unconscious prejudice against the defendant.

It is the order of the court that this cause be remanded with directions to the trial court to modify the money judgment by reducing the amount thereof in the sum of $4,611.53, as of the date of September 25, 1933, and as so modified the judgment will stand affirmed, each party to pay his or her costs on this appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and STEWART concur.

MR. JUSTICE ANGSTMAN not sitting.