LEWIS, RESPONDENT, *v.* LEWIS, APPELLANT.

(No. 7,896.)

(Submitted April 7, 1939.   Decided July 12, 1939.)

[94 Pac. (2d) 211.]

*Mr. G. G. Harris* and *Messrs. Speer & Hoffman,* for Appellant, submitted an original, a reply and a supplemental brief; *Mr. Harris* and *Mr. Harvey B. Hoffman* argued the cause orally.

*Mr. D. W. Doyle* and *Mr. Art. Jardine,* for Respondent, submitted an original and a reply brief; *Mr. Doyle* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendant appeals from a decree of divorce awarded plaintiff against him and assigns error to the court's action in the following respects: First, in granting plaintiff the divorce; second, in awarding plaintiff what defendant contends is excessive alimony and in making it a prior lien on his real estate; and, third, in finding that plaintiff is the owner of the family residence, which stands in her name, and of the household goods, furniture and other personal effects, and in denying him judgment that the residence belonged to him. We shall discuss these three specifications in the above order.

Both the plaintiff and the defendant sought a divorce on the statutory ground of extreme cruelty. It is unnecessary to comment upon this issue further than to say that the record unquestionably contains sufficient credible evidence to sustain the decree in that respect, and that this court cannot, therefore, disturb the trial judge's finding that the plaintiff was entitled to a divorce from the defendant. (See *Bischoff* v. *Bischoff,* 70 Mont. 503, 226 Pac. 508.)

We thus pass to the question of alimony. The court's finding on that matter is as follows: "Eighth. That defendant is an able-bodied man capable of earning and actually earning in excess of $100.00 per month, and in addition thereto, receives the rents, issues and profits of the real property hereinbefore described. That the sum of $100.00 per month is necessary to provide for the support and maintenance of plaintiff herein."

The provisions of the decree as to alimony are as follows:

"It is further ordered, adjudged and decreed that said defendant pay to plaintiff the sum of $9,600.00 for the support and maintenance of plaintiff, which sum is to be paid in monthly installments in the amount of $100.00 a month, commencing on the 5th day of July, 1938, and continuing on the 5th day of each and every month thereafter until and including June 5, 1946, and that said sum of $9,600.00 is hereby made a lien upon all the right, title and interest of the defendant of, in and to all of the real property hereinbefore specifically described, and

"It is further ordered, adjudged and decreed that the said defendant continue to pay the sum of $100.00 per month to plaintiff monthly commencing July 5, 1946, and thereafter until further order of this court,

"It is further ordered that nothing herein contained shall be construed as discontinuing the payments of $100.00 per month herein ordered at the end of eight years from July 5, 1938, but that such payments shall be continued to be made by the defendant to the plaintiff until the further order of the court.''

Before determining whether the alimony allowance is excessive, we will consider the question whether the court erred in making the alimony a prior lien on defendant's real estate or in its method of doing so; but we must first arrive at the meaning of the provision.

It is well settled that where a wife is given a divorce, the awarding of alimony is largely a matter of discretion in the district court, and that it is to be based, not upon a certain proportion of the husband's income or property, but is to be determined by the equities of the case and the financial condition of the parties. (*Cummins* v. *Cummins,* 59 Mont. 225, 195 Pac. 1031; *Wandel* v. *Wandel,* 76 Mont. 160, 248 Pac. 864; *Nuhn* v. *Nuhn,* 97 Mont. 596, 37 Pac. (2d) 571.)

Since the means of the husband and the needs of the wife, with due regard to all the circumstances, determine the equities in respect to alimony, and since the circumstances are naturally subject to change, the trial court is wisely given the authority,

after judgment, to modify its alimony order from time to time. (Sec. 5771, Rev. Codes.)

Thus, while alimony in gross is authorized by the statute ▋ (*Nuhn* v. *Nuhn*, supra), the better practice is to provide a monthly or other periodical allowance unless its payment would be endangered by reason of the husband's lack of industry or financial ability (*Bristol* v. *Bristol*, 65 Mont. 508, 211 Pac. 205), or for some other compelling reason. Furthermore, if that danger can be obviated by requiring security, as provided by section 5772, Revised Codes, there are at least two reasons why a lump sum should ordinarily not be awarded. The first is that by so doing the court awards a definite judgment which, while intended primarily for the wife's support, is fixed without reference to her continuing need, so that she or her estate will have the benefit of it in spite of her remarriage, her acquisition of other property or income, or her death. The second is, assuming that by this award the court does not exhaust its power but can hereafter award further alimony by way of monthly or lump sum payments (see *Bast* v. *Bast*, 68 Mont. 69, 217 Pac. 345), and thus reserves the right to increase the alimony provision, it does, by an award in gross, to that extent deprive itself of the power to reduce the provision. Obviously, the court should, so far as possible, retain its power to modify the alimony provision either way, as circumstances warrant, in the interest of justice to both parties. It follows, therefore, that if monthly alimony can be secured in some way, a lump sum should not be awarded.

The provision for $9,600, while stated as a judgment for ▋ that amount, cannot properly be designated as lump sum alimony, since it is not payable in a lump sum. Nor can it be regarded as a property settlement, since it was otherwise designated, and since it was apparently awarded without reference to the husband's debts (agreed to be $112,386.38, as against assets of $70,640.65), which should be considered and deducted from his income or property in determining alimony. (*Nuhn* v. *Nuhn*, supra.)

The only other apparent explanation is that it really was intended to constitute monthly alimony of $100 throughout, but was stated in the definite sum of $9,600 (though payable in monthly installments over a period of eight years), so as to provide security for a definite amount or period. This is confirmed by the further provision that "nothing herein contained shall be construed as discontinuing the payments of $100.00 per month herein ordered at the end of eight years from July 5, 1938, but that such payments shall be continued to be made by the defendant to the plaintiff until the further order of the court." Obviously, the payments after eight years cannot be considered as alimony to begin eight years after the decree; nor can the payments within the eight-year period be construed as partial payments of a $9,600 judgment. The question is whether the method used was the proper one by which to provide security for payment of alimony.

This court held in *Raymond* v. *Blancgrass*, 36 Mont. 449, 93 Pac. 648, 15 L. R. A. (n. s.) 976, that decrees in equity are judgments and are enforceable by execution like judgments in legal actions, and that, when properly docketed, they become liens upon the debtor's real estate. However, it would seem that the lien would be for only the accrued and unpaid installments, and not for such installments as might thereafter accrue.

Section 5772, Revised Codes, provides: "The court or judge may require the husband to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, and may enforce the same by the appointment of a receiver, or by any other remedy applicable to the case."

In *Gaston* v. *Gaston*, 114 Cal. 542, 46 Pac. 609, 55 Am. St. Rep. 86, it was contended that the effect of an identical section was to render void the provisions of a decree imposing a lien on defendant's land, on the ground that the court's power was limited to exacting security of him. The court said: "We think the law is otherwise. With us an action for divorce is treated as a case in equity (*Wadsworth* v. *Wadsworth*, 81 Cal. [182], 187, 22 Pac. 648 [15 Am. St. Rep. 38]); and the statute ought

not to be construed as abridging the power exercised by courts having cognizance of matrimonial causes—commonly, though not always, as a branch of their chancery jurisdiction—to declare a lien for securing the award of support to the wife in such cases. Said the supreme court of Ohio of a judgment like the present, except that it omitted the provision for a lien: 'That it is within the legitimate power of the court to make such decree a charge upon real estate we have no doubt, and it has been the practice so to do in cases where it was deemed proper.' (*Olin* v. *Hungerford,* 10 Ohio 268.) And such is the current of authority with but little dissent.''

Furthermore, if ''the court * * * may require the husband to give reasonable security * * * and may enforce the same * * * by any * * * remedy applicable to the case,'' there would seem to be no reason why it might not require him to execute a mortgage on certain or all of his property for a definitely limited amount and for a definite period, for that purpose and to enforce the giving of such security by providing that unless and until he did so, the decree should constitute a lien upon all of his real property to that extent. The amount of $9,600 and the period of eight years contemplated by the decree would seem not unreasonable as such limits of security. In this way the desired security can be provided without at the same time limiting the court's power to terminate or reduce the monthly payments during the eight-year period, and without possibly causing a question to arise in the future whether the $9,600 sum constitutes a present judgment bearing interest and binding defendant regardless of plaintiff's remarriage, survival or need during the eight-year period.

The provision for alimony payments of $100 per month, while sustained by the record as to plaintiff's need, is not sustained as to defendant's ability to pay. As noted above, the determination of alimony depends upon all the circumstances, including the husband's property, debts and income. In a case such as this, where the debts greatly exceed the assets, it seems clear that the husband's ability to pay must for prac-

tical purposes be measured entirely by his income. While it was shown that the defendant was engaged in various farming and business operations, it was not shown that he received any income from them, other than a $100 monthly salary, some part of which would be necessary for his personal needs. He seemed quite evasive and testified with reference to two farming tracts that he did not know whether they produced any income in 1937 or not; but he was not examined closely on the question of his income. It is therefore essential that the cause be remanded for a further hearing relative to defendant's property, debts and income for the fixing of alimony payments.

In his cross-complaint for divorce defendant prayed judgment that the home be found to belong to him. His allegation with reference to the matter was: "That the defendant paid the consideration for the home in which the parties have resided for years, but the title thereto was taken and now stands in the name of the plaintiff, but the property was not given to the plaintiff and belongs to this defendant."

Plaintiff made no objection to the attempted adjudication of title, but placed the matter in issue by her reply. The court made a finding of fact that plaintiff was the owner of the house and also of its contents, but the judgment and decree was silent concerning them. Defendant objects both to the finding in plaintiff's favor, and to the court's failure to decree that the residence belonged to him.

Defendant being the moving party, the burden was upon him to prove his case. In order to establish a trust within the provisions of section 6785, Revised Codes, it was necessary for him to overcome the presumption that where the husband paid the consideration and the title was taken in his wife's name, the transaction constituted a gift. (*Bingham* v. *National Bank of Montana,* 105 Mont. 159, 72 Pac. (2d) 90, 113 A. L. R. 315.)

In their testimony both parties asserted ownership, and the trial court, after hearing them, resolved the question of fact in plaintiff's favor. Defendant testified that he had put the

title in plaintiff's name in 1911 as security for the repayment of a $1,000 loan from her parents, which was repaid within a year, and that the agreement was that upon its payment plaintiff was to reconvey the property to him. However, he testified that when he informed her of this property purchase arrangement she said nothing; that when in 1930 for the first time he asked her to reconvey the property to him, the reason he gave was not that there was a trust arrangement or an agreement to reconvey, but that he had listed the property as his in connection with a loan, and "that I wanted it placed in mine, to show these people what I had done was done in good faith;" that she refused and that he did not renew his request until 1937, after this controversy had arisen. In view of the circumstances and in view of his delay for twenty-six years to make serious claim of title, we cannot conclude that the district court abused its discretion in finding for plaintiff upon the issue and in not finding for defendant.

With reference to the court's finding "that the plaintiff is ▇▇ the owner of the household goods, furniture and personal effects in the home," the situation is essentially different. No such issue was raised by the pleadings, and the only reference to it in the evidence is the following: "Mrs. Lewis, you claim to be the owner of the home at Brady?" "Yes." "And the fixtures in the house?" "Yes." That part of the finding cannot be sustained.

There was no adjudication of ownership in plaintiff, of either the house or its contents, as the finding was not followed by a ▇▇ corresponding provision in the decree. The findings of fact and conclusions of law do not constitute the judgment, but merely a foundation for a judgment. (*Galiger* v. *McNulty,* 80 Mont. 339, 260 Pac. 401; *State ex rel. Monteath* v. *District Court,* 97 Mont. 530, 37 Pac. (2d) 567.) It may be that the district court's failure to adjudicate the issue was because it considered the property ownership only for its bearing upon the question of alimony. But whatever the court's reason was, plaintiff has not by a cross-appeal challenged as error its failure

to adjudicate the question of ownership in her favor, and the matter is not before us.

Plaintiff has possession and occupancy of the residence, the title to which stands in her name. Whether the possession and use of the household goods, furniture and effects should be awarded to plaintiff during her need therefor, and what should be the extent and manner of security for alimony payments, can be determined in connection with the further hearing necessitated by this decision.

The decree is hereby ordered amended to provide that it shall constitute a lien upon all real property interests of defendant as of June 4, 1938, for the payment of alimony in a total sum not to exceed $9,600 over a period not to exceed eight years from that date, the district court to fix the definite time and amount of such security, and to require such security by mortgage or otherwise and upon such specific property as it may consider proper.

The findings and decree are therefore ordered modified in accordance herewith and affirmed as so amended, and the cause is remanded for further proceedings relative to monthly alimony, plaintiff's use of the household goods, furniture and effects, and specific security for alimony payments.

ASSOCIATE JUSTICES ANGSTMAN and ERICKSON concur.

MR. JUSTICE MORRIS, deeming himself disqualified, takes no part in the foregoing opinion.

MR. JUSTICE STEWART:

I concur in that part of the opinion which affirms the judgment of the trial court, and dissent from that part thereof which reverses such judgment.

Rehearing denied October 9, 1939.