BICKFORD, Appellant, v. BICKFORD, Respondent.

No. 8529

Submitted April 2, 1945. Decided May 18, 1945.

158 Pac. (2d) 796

Mr. Jess L. Angstman, of Havre, and Mr. E. J. McCabe, of Great Falls, for appellant.

Mr. John Marriott Kline and Miss Elizabeth Kline, both of Glasgow, for respondent.

MR. JUSTICE ADAIR delivered the opinion of the court.

This is an appeal from a judgment for the defendant and cross-complainant in a divorce action tried in Valley county, Montana. The parties were married on December 21, 1936. There are no children of the marriage. On August 7, 1943, the husband filed an amended complaint asking for a divorce based on extreme cruelty. Defendant answered denying the allegations of cruelty and, by cross-complaint, sought a divorce from plaintiff upon the same ground and plaintiff replied.

The cause was tried to the court sitting without a jury and thereafter the court made findings of fact and rendered a decree in favor of the defendant and cross-complainant. By the decree the marriage was dissolved and plaintiff ordered to "pay now $500.00 to the defendant, and * * * $25.00 a month, until further order of court."

The specifications of error challenge the sufficiency of the evidence to support the decree and the court's findings of fact numbered 4, 5 and 6.

The cross-complaint alleges that, "plaintiff has been guilty of extreme cruelty towards the defendant consisting of grievous mental suffering upon the defendant, in that for a period of more than one year last past the plaintiff has been running around with various women and going on wild parties with them; that among other times are the following instances: On or about June 1, 1937 the plaintiff entertained a blonde woman whose name the plaintiff knows but the defendant does not know, at the Palm, formerly a beer hall and dance place in Glasgow; that on numerous occasions in the winter of 1939-1940 the plaintiff and one known as * * * were on drunken

parties held in the Rose Room, a beer hall in Glasgow and also in other beer halls in Glasgow; * * * that on or about September 6, 1941, the plaintiff came in to Johnnies' Cafe in Glasgow with another couple, and a girl, whose name the defendant does not know but the plaintiff does, that the defendant was at that time working at Johnnies' Cafe and that she served them and that while they were there they were embracing each other, that they paid no attention to the defendant; * * * that all of the above matters have been of such a nature as to justly and reasonably destroy, and the same has destroyed the peace of mind and happiness of the plaintiff, and the same is of such a nature as to entirely defeat the proper and legitimate objects of matrimony and to render the continuance of the marital state between the parties perpetually unreasonable and intolerable to the defendant.''

The cross-complaint also alleges that plaintiff owns certain real and personal property; that he is employed as an engineer on the Great Northern Railroad earning between three hundred and six hundred dollars a month; that defendant is working and earning upwards of eighty-five dollars a month, but that she has been advised by competent medical authority that she will not be able to work regularly; that she will need one hundred to one hundred fifty dollars a month to properly take care of herself and that plaintiff can well afford to pay her such amount as alimony. The prayer is that plaintiff be denied a divorce and that defendant and cross-complainant be awarded a divorce and permanent alimony.

In his reply plaintiff denies the allegations of cruelty in the cross-complaint ''save and except that on or about June 1, 1937 there is a possibility that he and a blonde woman might have been seen together at the 'Palm,' a beer hall in Glasgow.''

Plaintiff's evidence wholly failed to prove the charges of cruelty made in the complaint and the only question before us is whether the evidence sustains the challenged findings of fact and decree made in favor of defendant.

On appeal to this court the presumption is that the decree

██ and findings of the trial court are correct. In re Bragg's Estate, 106 Mont. 132, 76 Pac. (2d) 57; Missoula Light & Water Co. v. Hughes, 106 Mont. 355, 77 Pac. (2d) 1041; Cedar Creek Oil & Gas Co. v. Archer, 112 Mont. 477, 117 Pac. (2d) 265; Wieri v. Anaconda Copper Min. Co., Mont., 156 Pac. (2d) 838; Whitcomb v. Koechel, Mont. 158 Pac. (2d) 496.

The findings of the trial court must be sustained if they are supported by substantial evidence. Kommers v. Palagi, 111 Mont. 293, 108 Pac. (2d) 208. All legitimate and reasonable inferences must be indulged toward upholding · the findings. Welch v. Thomas, 102 Mont. 591, 61 Pac. (2d) 404. In case of any reasonable doubt as to the sufficiency of the evidence to sustain a finding, the appellate court should resolve that doubt in favor of the finding and, in reading the record and considering the evidence and inferences, the court should be realistic and practical. Fackrell v. City of San Diego, Cal. 157 Pac. (2d) 625.

·The trial court's findings in question recite:

"4. That the above named plaintiff has been guilty of extreme cruelty towards the defendant consisting of grievous mental suffering upon the defendant, in that for a period of more than one year last past the plaintiff has been running around with various women and going on wild parties with them; that among other times are the following instances: on or about June 1, 1937 the plaintiff entertained a blond woman at the Palm Beer Hall in Glasgow; during the winter of 1939-1940 on numerous occasions plaintiff and one * * * were on drunken parties held in the Rose Room, a beer hall in Glasgow; * * * on or about September 6, 1941, while defendant was working at Johnnie's Cafe in Glasgow, the plaintiff, a girl (whom the defendant did not know) and another couple came into the said cafe; the defendant waited on them, the plaintiff and the unknown girl were embracing and paid no attention to the defendant; that all of the above matters have been of such a nature as to justly and reasonably destroy, and the same has destroyed the peace of mind and happiness of the defendant,

and the same is of such a nature as to entirely defeat the proper and legitimate objects of matrimony and to render the continuance of the marital state between the parties perpetually unreasonable and intolerable to the defendant.

"5. That it is necessary for the defendant to have an operation. That she is not in a position to pay the expenses of the operation and the necessary hospital and recuperation expenses. The plaintiff is in a position to pay for such expenses. The Court feels that $500.00 would be a just and ample sum to take care of these matters.

"6. The sum of $25.00 a month is necessary for the support of the defendant. The plaintiff is able to pay that amount."

At the trial the defendant testified that she was then working seven days a week as cook at the Allen Cafe in Glasgow, for which she receives a weekly wage of $29; that she had theretofore worked as waitress and cook in various other cafes in Glasgow although her employment had not been steady except for the last few years; that subsequent to the marriage she had seen the plaintiff "carrying on with other women down town here"; that in 1939 and 1940 she had seen him and a certain woman, whom she named, together "just plenty of times" and that they were "generally down in the Rose Room hugging and kissing each other"; that plaintiff "and a couple of railroad men and a couple of women came into Johnnie's Cafe where I was waiting on table at the time and I served them; it was about 3:30 in the morning and they had been drinking and while they were in there they were embracing each other and carrying on in there, and they paid no more attention to anyone than if there was nobody there. Then another night, or rather, Sunday morning it was, he was in there —he was with * * * that morning and it was pretty much the same thing, and the same thing has happened numerous times with others, and at the Allen Cafe."

The defendant also testified that at the time of the trial her health was not very good and that in three or four weeks after the trial she expected to journey from Glasgow

to Minot, North Dakota, where she would undergo a couple of operations; that she did not know when, following such operations, she would be able to work again; that she had no money or property with which to pay for her operations; that Dr. Larson had told her to stay off her feet and that, under present financial conditions, she estimated it would require from $100 to $150 a month for her to live and take care of her expenses during the time she would be hospitalized or incapacitated. This testimony stands undisputed in the record.

The defendant testified that she did not know the exact amount of plaintiff's earnings but that she would say plaintiff earns from $350 to $400 per month. Plaintiff testified: "I made $3,400.00, I think it was, last year." Such uncontradicted testimony constitutes substantial evidence which sustains the findings made and the decree rendered herein.

Where a wife is granted a divorce the awarding of alimony rests largely within the sound discretion of the trial court to be determined by the equities of the case and the financial condition of the parties. Lewis v. Lewis, 109 Mont. 42, 94 Pac. (2d) 211; Detert v. Detert, 115 Mont. 313, 142 Pac. (2d) 215.

We have carefully examined the record and find no error therein.

The judgment is affirmed.

Chief Justice Johnson, and Associate Justices Morris, Angstman, and Cheadle, concur.