WASHINGTON LODGE, NO. 54, I. O. O. F. *v.* FRELING-HUYSEN.[1]

1. INJUNCTION — INJURY TO PROPERTY — NUISANCE — ADJOINING LANDOWNERS.

Injunction will not lie at the suit of an adjoining landowner to restrain the owner of an hotel building from constructing a passageway 14 feet above an alley, and to secure the removal of existing passageways connecting the defendant's building, on the ground that by means of fans in the window of the hotel kitchen, opposite complainant's building, disagreeable odors are forced into the alley and into the rooms of complainant, where it appears that irreparable damage to defendant's property would result, even though the passageways may, to some degree, tend to retain in the alley the odors which are emitted from the kitchen when the wind is in a certain direction.

[1] Rehearing denied January 30, 1905.

2. SAME—PASSAGE OVER ALLEY—REMOVAL—LACHES.

Complainant's president, at the time of the contemplated erection of an hotel, expressed his approval of its erection. Twelve years after its erection, including certain passageways over an alley, complainant sued to secure their removal, and to enjoin the construction of another. The additional passageway would create no greater interference with light or circulation of the air than the old ones. A decree for complainant would ruin the defendant's property for hotel purposes. The defendant had obtained permission from the city for the construction of the passageways. *Held,* that laches barred relief if complainant was otherwise entitled to it.

Appeal from Wayne; Brooke, J. Submitted October 18, 1904. (Docket No. 48.) Decided December 7, 1904.

Bill by Washington Lodge, No. 54, Independent Order of Odd Fellows, against Elizabeth M. Frelinghuysen to restrain the obstruction of an alley. From a decree dismissing the bill, complainant appeals. Affirmed.

In 1835 and 1846 Edmund A. Brush platted certain lands in the city of Detroit, which plats were duly recorded. One of the blocks is surrounded by Randolph street, Macomb street, Brush street, and Monroe avenue. An alley 20 feet wide runs north and south through the block from Monroe avenue to Macomb street. The complainant is the owner of lot 10 and a part of lot 9, and the northerly 1½ feet of lot 11, all fronting on Randolph street, and abutting on said alley. The defendant is the owner of the southerly 38½ feet of lot 11, on the corner of Randolph street and Monroe avenue, and also abutting on said alley. She also owns lot 12, on the opposite side of the alley, which lot fronts on Monroe avenue, and extends along the east side of said alley. Both parties derive title through mesne conveyances from Mr. Brush. The alleys on the plats are not marked "alley," and there is nothing to show the purpose for which they were dedicated, except their width and their location in reference to the lots, but they have always been used as alleys.

The following is the plat referred to in the opinion:

In 1891 and 1892 the defendant constructed upon lots 11 and 12 the Hotel Ste. Claire. The office, bar, and dining rooms, parlors and sleeping rooms, of the hotel, which is seven stories high, are on lot 11. The kitchen is on the second floor of the building, on lot 12. The third floor of that building is also used for sleeping rooms. In order to connect the kitchen with the dining room of the hotel, a passageway was constructed over the alley, 14½ feet above it. The third floors of the buildings are also connected in the same way; these passageways being directly above each other, 16 feet wide and 2 stories high. The com-

plainant's building is several stories high, with windows and doors facing out and upon the alley. The descriptions in the deeds are as follows: "Lot No.— in Block No.— of the subdivision of the Brush Farm, according to the plat of record, in the office of Register of Deeds, in Liber —," etc.

While the defendant was advised that it was not necessary to obtain the consent of the common council, yet, in order to avoid possible litigation with the city, she did obtain the permission of the common council. It was not practicable for the defendant to construct this hotel without using both buildings and constructing these overhead passageways. No objection was made by the complainant to the construction of the passageways until the filing of this bill of complaint, April 16, 1903.

February 24, 1903, the defendant obtained permission from the common council to construct another passageway over the alley, immediately south of the present passageways. The first passageways are within a few inches of the line of complainant's property. The new passageway does note create any additional obstruction to light, air, or access. The purpose of the bill is to restrain the building of this new or enlarged passageway, and to secure the removal of the present ones. The case was heard upon pleadings and proofs, and the bill dismissed.

*George Gartner*, for complainant.

*Fred A. Baker*, for defendant.

GRANT, J. (*after stating the facts*). One ground of complaint is that by means of fans in the window of the hotel kitchen, opposite the complainant's building, disagreeable odors are forced into the alley, and across it into the rooms of the complainant.

The covered passageway does not cause these unpleasant odors. If forcing them from the kitchen into the alley is a nuisance to the complainant or to others, it can easily be abated by the erection of a ventilator or some

other means. The defendant may be compelled to abate
the nuisance of obnoxious odors, but should not be com-
pelled to take down this passageway, at irreparable dam-
age to property, even though it may, to some degree,
tend to retain in the alley the odors which are emitted
from the kitchen, when the wind is in a certain direction.
This ground of complaint can therefore be eliminated
from the case.

The other ground for complaint is that the passageway
interferes to some extent with light and the free circulation
of air in the alley, thereby affecting the ventilation of the
rear of the complainant's building. The first story of its
building is occupied as a dry goods store, whose occupant
does not complain; the second story, for offices and rooms
for society purposes in the rear. The third floor is used
entirely for society purposes, and on the fourth floor there
is a hall in front, committee rooms, and dining room, with
a kitchen in the rear. In the rear are also situated toilet
rooms, water-closets, and an ash chute. The upper stories
are occupied mainly for meetings in the evening. In the
winter time the windows are closed, and the ventilation is
not affected by the passageway.

The complainant, through its officers, were fully in-
formed of the character of this building at the time plans
were made for its erection, and while it was being erected.
Defendant, by petition, applied to the common council for
permission to construct this passageway across the alley,
and permission was granted. It was placed at a sufficient
height to permit the passage underneath of fire engines
and all ordinary vehicles which could be used in the busi-
ness of those whose property abuts upon the alley. The
then president of the complainant expressed his approval
of the erection of the hotel. It is manifest that the officers
of the complainant desired its erection. It supplanted an
old building three or four stories high. It was believed
that it would increase the value of the complainant's and
other property in the vicinity, and that it did so is beyond
question. It was then known that upon the land east of

the alley was to be erected the hotel, with its offices, sleeping and dining rooms, and that across the alley was to be located the kitchen. There is no room for a kitchen in the building on the east of the alley. If compelled to tear down this passageway, it would mean virtually the abandonment of the property as a hotel, and cause large and irreparable damage. It is not constructed for or adapted to any other purpose. Complainant's property is assessed at $37,000, while that of the defendant exceeds in value several times that amount.

For 12 years the complainant kept silent and acquiesced in the erection and continuance of this structure. Only when the defendant was about to extend this superstructure one story in height on the south of the present structure did it make complaint. It evidently did not then make complaint because the additional structure proposed would create any additional injury, for it evidently does not. It creates no greater interference with light or the circulation of air than does the old one.

This case is controlled by the principle enunciated in *Edwards* v. *Mining Co.*, 38 Mich. 49, where the court said:

"An injunction is not a process to be lightly ordered in any case. Where the effect will be to present to the owners of a valuable mill the alternative either to purchase complainant's lands at his own price, or to sacrifice their property, any court having the power to order it ought very carefully to scrutinize the case and make sure that equity requires it. In theory its purpose is to prevent irreparable mischief. It stays an evil the consequences of which could not adequately be compensated if it were suffered to go on." Citing many authorities.

In that case the mining company had erected a large stamp mill—probably not so expensive as the hotel property in question here—upon a stream running through Mr. Edwards' land, or land that he purchased after the mill was erected. The stamp sand was carried downstream

and deposited upon his land. It was held that equity would leave him to his remedy at law.

Lord Camden, in *Smith* v. *Clay*, Ambl. 645, decided in 1767, and more complete report in a note to *Deloraine* v. *Browne*, 3 Brown's Ch. 633, in 1792, said:

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands where the party has slept upon his right and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing."

The complainant's claim is that the defendant must now tear down her passageway, ruin her property for the purpose for which it was constructed, and cause her irreparable damage, in order that it may obtain a little light and air. The proposition does not appeal with any force to a court of equity and conscience. Complainant should have spoken sooner. It will not be heard to now invoke the conscience of a court of equity, but will be left to its remedy, if it has one, in a court of law.

This disposal of the case renders it unnecessary to determine the question of the rights of abutting property holders in the alley. No other property holder is here complaining, and it does not appear that any other one can possibly be damaged by this passageway.

Decree affirmed.

The other Justices concurred.