UNION BANK & TRUST CO. ET AL., RESPONDENTS, *v.* WIECK ET AL., DEFENDANTS; WOODMAN ET AL., APPELLANTS.

(No. 7,161.)

(Submitted January 3, 1934. Decided January 22, 1934.)

[29 Pac. (2d) 384.]

*Mr. Oscar C. Hauge,* for Appellants, submitted an original and a reply brief and argued the cause orally.

134

*Mr. Max P. Kuhr,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by defendants Woodman and Kirk from a judgment or decree in favor of plaintiffs. The action is one to foreclose a chattel mortgage executed by defendants Wieck and Kline to plaintiffs on March 5, 1931, and for the possession of the mortgaged chattels consisting of furniture and fixtures.

In the pleadings and evidence, plaintiffs concede that defendants Woodman and Kirk held two mortgages on the same property prior in point of time to plaintiffs'. One was executed on June 11, 1929, and the other on December 3, 1930. These mortgages the court found had been extinguished and discharged and ceased to be liens because prior to instituting this action plaintiffs offered to pay the amounts secured thereby and deposited the money to the credit of defendants Woodman and Kirk in the Hill County State Bank of Havre and gave them due notice thereof.

The principal contention arises out of the following facts: On February 1, 1930, Wieck and Kline executed and delivered to Woodman and Kirk nine notes for $97.57 each, which had written thereon "Security, Furniture & Fixtures," and on September 10, 1930, they also executed and delivered to Wood-

man and Kirk a note for $350 with the same notation thereon. The mortgage of December 3, 1930, made no reference to these notes. The point of difference between the parties on this appeal, tendered by appropriate pleadings, is whether the notes of February 1 and September 10 were and are secured by the mortgage of June 11, and whether they constitute a prior lien over plaintiffs' mortgage.

It is first contended by appellants that the court erred in ▮ refusing them a jury trial. They, by their answer, sought the foreclosure of their mortgages, contending that they secured the notes of February 1 and September 10, as well as the notes mentioned in the mortgages. An action to foreclose a mortgage is one in equity, and neither party is entitled to a jury trial. (*Rochester* v. *Bennett,* 74 Mont. 293, 240 Pac. 384; *Bice* v. *Daffern,* 88 Mont. 479, 293 Pac. 433.)

Plaintiffs asked for possession of the mortgaged chattels in a separate cause of action. This they had a right to do. (Sec. 8286, Rev. Codes 1921.) The mortgagors defaulted, and as to them there was no issue to be tried. The right of possession was incidental to and dependent upon whether plaintiffs' mortgage had priority over appellants' as to the notes of February 1 and September 10. The issue as to the priority of the mortgages, the only serious point of difference between the parties, presents a proper subject of equity jurisdiction. (11 C. J. 661; 41 C. J. 597.) The court may, but is not bound to, call a jury in an equity case. (*Bosanatz* v. *Ostronich,* 57 Mont. 197, 187 Pac. 1009; *Sanford* v. *Gates, Townsend & Co.,* 21 Mont. 277, 53 Pac. 749.) There was no error in refusing a jury trial.

The court found that it was agreed between the makers of ▮ the notes of February 1 and September 10 and Woodman and Kirk that the notes should be secured by the mortgage of June 11. As between the parties, such agreement is valid as a mortgage though it is not executed with the formalities required of a chattel mortgage. (*Barth* v. *Ely,* 85 Mont. 310, 325, 278 Pac. 1002; *Fergus County* v. *First State Bank of Hilger,* 67 Mont. 1, 213 Pac. 1114; *Scott* v. *Tuggle,* 74 Mont.

476, 482, 241 Pac. 229; *Angus* v. *Mariner,* 85 Mont. 365, 278 Pac. 996.)

But the court found that at and prior to the time of the execution of the mortgage to plaintiffs, they had no ''notice or knowledge of any future advances made under either of the chattel mortgages of the defendants Mary Woodman and Cornelius Kirk, nor did plaintiffs at such time have any notice or knowledge of any agreement, verbal or otherwise, existing between the defendants Anthony Wieck and Ralph E. Kline, on the one part, and the defendants Mary Woodman and Cornelius Kirk, on the other part, relative to any sum or sums of money secured by either of the said mortgages of the defendants Mary Woodman and Cornelius Kirk, except the said sums which the said mortgages were originally given to secure, nor did plaintiffs at such time have any notice or knowledge of the existence of any verbal mortgage in favor of, or claimed by said Mary Woodman and Cornelius Kirk and covering the personal property included in the mortgage of the plaintiffs and hereinafter described, or that said Mary Woodman and Cornelius Kirk claimed that their said chattel mortgage secured the payment of any sum or sums whatsoever other than the amounts therein respectively expressed. That the defendants Mary Woodman and Cornelius Kirk at and prior to the time of the execution of said chattel mortgage to plaintiffs, examined the same, were familiar with all the terms and provisions thereof, and consented thereto.'' It is these findings that are questioned by appellants.

Appellants produced evidence tending to show that plaintiffs did have notice. It would serve no useful purpose to review their evidence here. They contend that plaintiffs did not deny such notice, and that therefore there is no conflict in the evidence on the point. If this is so, the judgment cannot stand. But, if there is substantial conflict in the evidence reasonably justifying different conclusions, the judgment on this feature of the case must be affirmed under the repeated decisions of this court. (*Orton* v. *Bender,* 43 Mont. 263, 115 Pac. 406; *Nolan* v. *Benninghoff,* 64 Mont. 68, 208 Pac. 905; *Shep-*

*herd & Pierson Co.* v. *Baker*, 81 Mont. 185, 262 Pac. 887; *Vesel* v. *Polich Trading Co.*, ante, p. 118, 8 Pac. (2d) 858.)

Appellants invoke the rule that in viewing plaintiffs' evidence, it must be taken as establishing whatever is the least favorable to them from each of their witnesses. Conceding the correctness of this claim, we proceed to an analysis of plaintiffs' evidence on the question of notice.

Only two witnesses testified for plaintiffs. Plaintiff O. C. ▮ Shepherd testified that he obtained from Wieck and Kline a list of their indebtedness, and among them was $2,500 owing to Kirk and Woodman. Later he checked the records to see what the mortgages covered. Before writing up plaintiffs' mortgage, the witness had further discussion of the amount of the indebtedness of Wieck and Kline to Woodman and Kirk. He said that Wieck "always claimed there was an advance clause in the mortgage"; that he told Wieck "that there was no mortgage on them other notes and showed it to him." He was asked by plaintiffs' counsel, Mr. Kuhr: "Did either Mr. Wieck or Mr. Kline ever tell you or tell me in your presence that they had an agreement, a separate agreement with Kirk and Woodman, whereby they secured some notes?" To this he replied, "No sir; they always claimed it was an advance clause in the mortgage." He was then asked, "After we showed him there was no advance clause, what did he say then?" to which he replied: "Well, I don't know. He didn't say anything; he couldn't say anything." On cross-examination he was asked the following question: "Tony Wieck must have been claiming then, that the $850 and $350 was secured, wasn't he?" to which he replied, "Well, he claimed there was an advance clause in the mortgage that covered it; yes, he done that."

The witness admitted that plaintiffs took their mortgage without consulting Kirk as to the extent of the security held by Woodman and Kirk, but reiterated the statement that he was never advised of any special agreement between Wieck and Kline and Woodman and Kirk, by which the mortgage of June

11 was to stand as security for the notes of February 1 and September 10. On redirect he testified:

"Q. Mr. Shepherd, just before the mortgage was written up and you made the final deal, Wieck and Kline were convinced that there was not any advance clause in the mortgage, were they? A. Who did you say?

"Q. Wieck and Kline. A. That was my understanding of it. We told them there wasn't and we wrote the mortgage assuming there wasn't and they took it and looked it over and signed it, and it is a cinch we told them there was no advance clause."

Kuhr, attorney for plaintiffs in procuring their mortgage, testified that he obtained from Shepherd a list of the indebtedness of Wieck and Kline showing a debt to Woodman and Kirk of $2,500. He examined the mortgages of record and found no advance clause in either mortgage. He said: "Subsequently we had some discussion in my office, at which Mr. Shepherd was present, Mr. Wieck, and on one or two occasions I believe Mr. Kline, and I finally prepared the mortgage. I had some discussion with Wieck and Kline on those occasions about these mortgages to Woodman and Kirk as to what they secured, and I told them that as far as we could see the only thing they secured was the amount mentioned in them and they seemed to be satisfied with that. They never at any time told me about any special agreement that they had relative to the securing of any future advances; that is to say, if they were not secured under the terms of the mortgage, they were not secured at all. That is the understanding I had." The notes of February 1 and September 10 were never submitted to him. On cross-examination he testified:

"Q. So you did know that Tony Wieck was claiming that Woodman and Kirk were protected before you took this mortgage which you took? A. Well, yes, but not when we finally fixed up the deal; I didn't know anything of the kind then. I had had some information to that effect before. Q. That Wieck was claiming they were protected? A. Yes. Q. Then when you fixed up the deal did you understand that he made

no contention of that kind at all? Was that your understanding? A. Yes." Witness said that no one ever told him of the agreement between Wieck and Kline and Woodman and Kirk, that the latter had security other than as shown by the mortgages.

Kirk, one of the defendants, read the mortgage that was given to plaintiffs before it was executed. That mortgage contains this clause: "The mortgagors hereby declare and represent to the mortgagees that the mortgagors own said property, and possess lawful right and authority to sell, mortgage and dispose of the same, and that the same is free and clear of all liens and incumbrances except incumbrances now of record, and the loan secured herein is obtained by these representations."

It is thus seen that the only notice which came to plaintiffs according to their evidence was notice that Wieck and Kline contended that Woodman and Kirk had security for the notes of February 1 and September 10 by virtue of an advance clause in the mortgage. There is evidence that they had no notice of the claim now shown, viz., that the notes had written across their face, "Security, Furniture & Fixtures." Accepting plaintiffs' evidence on that point, it is seen that they had no notice of the agreement to the effect that these notes were secured, other than the claim of security by virtue of an advance clause in the mortgage. However, notice that the mortgagors claimed the notes were secured by an advance clause in the mortgage of June 11 was sufficient to put a reasonable man on inquiry. But plaintiffs made reasonable inquiry by examining the mortgages and by ascertaining that they contained no advance clause. They went further and gave Kirk the opportunity to read their mortgages. He read it and made no complaint of its provisions above quoted. They were not required to do more in pursuit of reasonable inquiry as against the notice brought home to them. There was substantial evidence warranting the finding of the trial court.

As we have said, there was evidence offered by appellant sustaining the opposite view. This conflict in the evidence pre-

sented a question for the trier of the facts, and we cannot say that the court's findings are not supported by substantial evidence, or that the preponderance of the evidence is in conflict with the findings. The burden of showing notice was upon appellants. (11 C. J. 662.) Whether that burden was sustained was for the trial court where, as here, there is evidence supporting either conclusion. (Compare *Hansen* v. *Johnson,* 90 Mont. 597, 4 Pac. (2d) 1088.)

The only remaining question is whether the court was warranted in finding, as it did, that the liens of the mortgage of June 11 and December 3, 1930, were extinguished and discharged as against plaintiffs by the tender made by them before commencing this action.

The evidence shows, and the court found, that plaintiffs offered to pay to appellants the sum of $1,332, which was sufficient to pay the amount due under the terms of both mortgages, with interest and taxes, and that they deposited that sum in the Hill County State Bank of Havre, a bank of good repute, and gave notice thereof to appellants. The notice recited, in substance, that the plaintiffs offered to pay to appellants the sum of $1,332 in full payment of all moneys due to them "under the terms of two certain chattel mortgages" made and executed by Anthony Wieck and Ralph E. Kline dated, respectively, on June 11, 1929, and December 3, 1930, and that the said sum was deposited to their credit in the Hill County State Bank of Havre, being a bank of deposit within this state of good repute, and reciting "which said sum is in full payment and extinguishment of all indebtedness due you under the terms of your two said chattel mortgages aforesaid."

Appellants contend that the offer was not unconditional, but conditioned as being in full payment and extinguishment of all moneys due under the terms of the mortgage. They contend that, had they accepted it, they would have been precluded from thereafter contending that there was more due them under the mortgages, and hence, under authorities cited by them, the tender was not sufficient. We may assume that, if appellants' premise were true, the claimed result would follow,

and the tender would not have been sufficient. But the fallacy of their contention rests in the assumption that the notes of February 1 and September 10 were secured by the terms of the mortgage of June 11, 1929. They were not secured by the "terms" of that mortgage. The tender and notice simply was made in full settlement of the debt secured "by the terms of the mortgages" of June 11, 1929, and December 3, 1930. The notes of February 1 and September 10 were secured only by reason of the separate agreement evidenced by the indorsement on the notes and oral evidence connecting them with the mortgage of June 11. Appellants could have accepted the amount tendered and still contested their right to security for the additional amount upon the separate agreement.

Contention is also made that the tender was not kept good. The evidence does not sustain this contention.

No error appearing, the judgment must be and is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.