GIBBS, Appellant, *v.* GARDNER et al., Respondents.

(No. 7,774.)

(Submitted May 6, 1938. Decided June 9, 1938.)

[80 Pac. (2d) 370.]

*Mr. Elmer E. Hershey,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. E. C. Mulroney,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

The plaintiff seeks a writ of injunction to abate a nuisance. The alleged nuisance consists of maintaining and operating in an alleged unlawful manner a headgate in an irrigation ditch. The ditch is owned jointly by the parties to the action at bar and a number of others.

In 1903, in an action designated as Cause No. 1953 in the District Court of Missoula county, Montana, 23 water rights out of Rattlesnake Creek were adjudicated. The total awards by that adjudication aggregated approximately 6,000 inches, while the normal flow of the stream is approximately 2,000. The waters were diverted through the Day-Hamilton or Worden Ditch; the ditch that diverts the waters in controversy here was awarded the twenty-second right of 115 inches by that adjudication, and users under this twenty-second right obtain an ample supply only when there is an abnormal flow in the stream.

The award through the Day-Hamilton ditch was made to eleven different persons named in the decree, all equal in time. But no adjudication has ever been made of the rights of the respective parties to the 115 inches of waters diverted through their joint ditch. The parties to this action are successors in interest of some one or another of the parties whose rights in Rattlesnake Creek were adjudicated by the 1903 decree.

Plaintiff's contention is not that the headgate is a nuisance in itself, but that it is operated in a manner that results in injury to all users of water below the point where defendants' lateral diverts the water from the main ditch. In addition to the above facts, the complaint alleges, in substance, that the lands irrigated by the waters diverted through the Day-Hamilton ditch have been divided into five-acre tracts known as the Cobbin Camp Site; that plaintiff is in possession of Lot 14 thereof and entitled to five inches of water; that defendants' lateral is the fourth below the intake of the main ditch; that plaintiff and others who are below the point of intake of defendants' lateral are entitled to 90 of the 115 inches awarded to the Day-Hamilton ditch; that defendants' lateral is 18 inches above the bottom of the main ditch, and that their headgate is built so that boards may be inserted in the headgate in a way that obstructs the entire flow of water when a limited amount is flowing, and defendants take all the water that reaches their point of diversion and prevent any from escaping down the ditch to the laterals of the lower users, resulting in injury to the latter; that by reason of the insertion of the boards in the headgate, which plaintiff designates as a dam, plaintiff and other lower users are denied the use of their pro rata portion of the water; that the dam is not carefully tended by defendants, and the waters, if the flow is heavy, overrun the banks of the ditch and are wasted; that defendants frequently impound the waters in the ditch for the sole purpose of bathing therein, thereby polluting the waters and rendering them unfit for domestic purposes, for which purposes they are used by some of the lower users; that defendants can take their water out of the ditch by a lateral higher up, thereby eliminating the necessity for the dam, and

that plaintiff and other lower users dug such a lateral, but defendants refused to use the same; that such use of the ditch by the defendants has become a nuisance by reason of the unlawful obstruction of the free passage of the water through the ditch to the lower users. An injunction is prayed for restraining the defendants from depriving plaintiff of the use of the water to which he is entitled.

The answer admits defendants placed the boards in the headgate in order to raise the water to a point where it will flow through the lateral; that such practice has been followed each year since the water was first diverted through the Day-Hamilton ditch in 1898; denies that placing such boards in the headgate deprives lower users of water to which they are entitled; denies that plaintiff or others use the water in the ditch for domestic purposes; admits replacing the boards in the headgate after they had been removed by others, but did so when they, the defendants, were entitled to the water.

For a further defense and affirmative relief, defendants allege the ownership of Lot 12 at the camp site mentioned, the necessity of artificial irrigation for such land for the production of fruit and garden truck to which the land is utilized; that the whole said five acres is irrigable from the Day-Hamilton ditch and not irrigable from any other source; that it is now and always has been necessary, in order to get the water to flow out of the Day-Hamilton ditch into defendants' lateral and upon their land, to place in the headgate at the point of defendants' diversion a board or boards to raise the water to a height that it will flow into such lateral; that the defendants and their predecessors in interest installed and have maintained since August 29, 1898, the headgate, and have during all the years since placed the boards therein to raise the water when irrigating, as above mentioned, all of which is well known to all water users from the Day-Hamilton ditch, and has been so known since 1898; that the practice has been and is open, notorious, peaceful, exclusive, uninterrupted, adverse and hostile against the plaintiff and all others, and that defendants have acquired a right by prescription to use such headgate at such point and to place the

boards therein for the purpose mentioned; that the plaintiff has heretofore interfered with defendants' rights as above set out, and has removed the boards from the headgate at times when defendants were entitled to the use of the water to defendants' injury, and threatens to so remove the boards hereafter which will lead to the further serious injury of defendants and to a multiplicity of suits, and defendants pray that plaintiff's action be dismissed, that defendants have their costs and that plaintiff and his representatives be enjoined from molesting defendants' headgate or interfering with their use of their five inches of water. The affirmative matter in the answer was denied by reply.

The matter came on for hearing before the court sitting without a jury; numerous witnesses testified for the respective parties; findings were proposed by each; the court and the parties viewed the premises involved; briefs were submitted, and, after consideration, the court adopted the findings proposed by the defendants, made conclusions of law in accordance therewith, and made and entered its decree dismissing plaintiff's action with costs allowed to the defendants. From such judgment plaintiff appeals. Seven specifications of error are assigned.

Under the established rules, the court enters upon the consideration of the questions involved upon appeal under the presumption that the trial court was correct in its determination of the controversy, and the burden is upon the appellant affirmatively to show reversible error (*Downs* v. *Nihill,* 87 Mont. 145, 286 Pac. 410), and that findings of fact made by the district court in an equity case will not be disturbed on appeal unless there is a decided preponderance of the evidence against them, nor where the evidence discloses reasonable grounds for different conclusions. (*Wills* v. *Morris,* 100 Mont. 514, 50 Pac. (2d) 862; *Grosfield* v. *Johnson,* 98 Mont. 412, 39 Pac. (2d) 660; *Union Bank & Trust Co.* v. *Wieck,* 96 Mont. 132, 29 Pac. (2d) 384; *Nuhn* v. *Nuhn,* 97 Mont. 596, 37 Pac. (2d) 571; *Fousek* v. *DeForest,* 90 Mont. 448, 4 Pac. (2d) 472; *Husser* v. *Bronson,* 88 Mont. 239, 292 Pac. 585; *Humble* v. *St. John,*

72 Mont. 519, 234 Pac. 475; *Dean* v. *Stewart*, 49 Mont. 506, 143 Pac. 966.)

In the record before us the evidence does not preponderate against the findings of the court. Plaintiff did not clearly establish the fact that defendants used water to which they were not entitled. The evidence does not show that defendants at any time used water when there was sufficient flow to justify a division, or that such as there was when the flow was insufficient would be enough to be of material benefit to plaintiff.

Plaintiff proceeds under section 8642, Revised Codes, designating his action as one to abate a nuisance, and tried his case upon that theory. Proceeding upon such theory, have defendants acquired a prescriptive right to maintain such nuisance?

If the injury alleged arises from the maintenance of a nuisance, is it a private and not a public nuisance? "A nuisance is common or public where it affects rights enjoyed by citizens as part of the public, that is, the rights to which every citizen is entitled. A private nuisance is one that affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public." (46 C. J., sec. 3, p. 646.)

Defendants allege that they have acquired a right by prescription to maintain and operate their headgate in the manner it has been operated since 1911. It is admitted that it has been maintained and used in such manner without material change since the date mentioned. This court has held that a water right may be acquired by prescription (*Custer Consol. Mines Co.* v. *City of Helena*, 52 Mont. 35, 156 Pac. 1090; *Verwolf* v. *Low Line Irr. Co.*, 70 Mont. 570, 227 Pac. 68), and we know of no good reason why the right to maintain and operate a headgate to divert water may not also be acquired by prescription. The testimony shows that the mode of diversion is necessary to make the water flow out of the ditch into defendants' lateral. It is alleged that the use has been the same since 1898 and proof was given that such use has been in uninterrupted operation since 1911.

A private nuisance may be abated by the person injured, but at his own risk, but "the remedy of abatement by act of the person injured should be resorted to within a reasonable time, as the right to so abate may be lost by acquiescence in the injury for a considerable time." (46 C. J. 756.) "One who has slept upon his rights for a considerable time by acquiescing in the alleged nuisance will be denied equitable relief." (Id., 776.) "A suit to abate or restrain a nuisance must be promptly brought or the right to equitable relief may be lost. A proceeding to abate a private nuisance cannot be brought after the expiration of the time limited by statute for such proceeding, but such suit is not barred until the full statutory period has run." (Id., 779.)

In *Thomas* v. *Woodman,* 23 Kan. 217, 33 Am. Rep. 156, defendants diverted water from a stream, lessening the amount so that bars of sand developed in the channel causing alleged injury to the plaintiff. Four years after the diversion was begun plaintiff commenced his action for nuisance. The court held that the plaintiff allowed an unreasonable time to elapse before bringing his suit.

In *Whitmore* v. *Brown,* 102 Me. 47, 65 Atl. 516, 9 L. R. A. (n. s.) 868, 120 Am. St. Rep. 454, defendants erected certain wharves ten years prior to the institution of plaintiff's action. No previous complaint had been made by plaintiff. The court held the delay to be unreasonable, saying: "The bill would also need to be dismissed under the general principle of equity jurisprudence that an equity court will not intervene where the plaintiff has long tolerated the alleged nuisance, but will leave him to establish his claim at law."

In *Washington Lodge* v. *Frelinghuysen,* 138 Mich. 350, 101 N. W. 569, plaintiff sought to have a passageway beside defendant's kitchen removed, alleging nuisance by reason of offensive odors. The court said: "A court of equity * * * has always refused its aid to stale demands where the party has slept upon his right and acquiesced for a great length of time."

In *Bradbury Marble Co.* v. *Laclede Gas Light Co.,* 128 Mo. App. 96, 106 S. W. 594, plaintiff brought an action to abate a

nuisance alleging that dust from defendant's plant settled on the marble, damaging it when wet. The court said: "While a right to maintain a public nuisance cannot be acquired by prescription, the right to maintain or continue a private nuisance may be, that is, by adverse and exclusive enjoyment, for the length of time prescribed by the statute of limitations."

In *Powers' Appeal*, 125 Pa. 175, 17 Atl. 254, 11 Am. St. Rep. 882, defendants had built and maintained a boom in connection with their mill. Plaintiff brought suit praying that the boom be removed and its re-establishment be prohibited. The court held that the denial of defendants' right to maintain the boom came too late to be conscionable. The court said in *Stewart Wire Company* v. *Lehigh Coal & Nav. Company*, 203 Pa. 474, 478, 53 Atl. 352, 353: "Where a party seeks the intervention of a court of equity to protect his rights by injunction, the application must be seasonably made."

"Adverse possession and exercise of the right of diverting water for twenty years is sufficient to raise a presumption of a grant, and to defeat complainant's right to an injunction against a private nuisance. * * * But the extent of the prescriptive right must be limited by the actual enjoyment, and must be commensurate with that enjoyment." (High on Injunctions, 4th ed., sec. 799.)

It is not to be understood that defendants, by reason of their prescriptive right to operate their headgate as heretofore, may invade plaintiff's right to his pro rata portion of the waters diverted through the Day-Hamilton ditch with impunity.

The judgment is affirmed.

ASSOCIATE JUSTICES STEWART, ANDERSON and ANGSTMAN concur.

NOTE: MR. CHIEF JUSTICE SANDS stated in conference that he would concur in the result reached in the above opinion; death prevented his so stating under his signature.