STEARNS, ET AL., APPELLANTS, *v.* BENEDICK, ET AL., RESPONDENTS.

No. 9116.

Submitted May 6, 1952. Decided August 30, 1952.

247 Pac. (2d) 656.

Mr. A. S. Ainsworth, Thompson Falls, Mr. F. N. Hamman, Polson, for appellants.

Messrs. Smith, Boone & Rimel, Messrs. Shallenberger & Paddock, Missoula, for respondents.

Mr. Hamman, Mr. Russell E. Smith and Mr. William F. Shallenberger argued orally.

MR. CHIEF JUSTICE ADAIR:

In September 1949, in the district court of Sanders county, the plaintiffs, Wesley Stearns and Ruth Stearns his wife, com-

menced this action against the defendants Claude W. Benedick and Ruth P. Benedick, husband and wife, Ferris F. Blanchard and Doris Blanchard, husband and wife, and Vina Blair, seeking a decree adjudicating the rights of the parties in and to the beneficial use of the waters of Clarks Creek in said county and to the east and west forks thereof.

This is an appeal by the plaintiffs from the decree entered in such action.

In their complaint the plaintiffs alleged that their predecessors in interest were and that plaintiffs are the owners and in possession of lands in Sanders county described as the northwest quarter of section two; the west half of the southwest quarter of section two; the northeast quarter of the southwest quarter of section two; the southeast quarter of the northeast quarter and the east half of the southeast quarter of section three; the northeast quarter of the northeast quarter of section ten; the northwest quarter of the northwest quarter of section eleven; all in township twenty north, range twenty-six west of the Montana Principal Meridian; that there is running through said lands from a northerly to a southerly direction a certain stream which is fed by springs and streams which are tributary to said stream, which said stream is now known as Lynch Creek and which was formerly known as Clarks Creek and said stream has its origin at a point about seven miles north of the north boundary line of the lands owned by the plaintiffs as hereinabove described, and which flows entirely through the said lands of plaintiffs; that a stream known as the west fork of Clarks Creek, sometimes called Cedar Creek, and a stream known as the east fork of Clarks Creek, both flow into what is now known and called Lynch Creek at points north of plaintiffs' lands and both said streams are tributaries of the said Lynch Creek, formerly known as Clarks Creek, and both said streams tend to a large extent to make said Lynch Creek; that on or about December 25th, 1869, the predecessors and grantors in interest of the plaintiffs diverted and used from the said Clarks Creek, now known and called Lynch Creek, all of the water from said stream,

which said appropriation was made by means of a ditch, the head-gate or point of diversion of which was taken out at a point about one-fourth mile north of the northwest corner of section two, township twenty north, range twenty-six west of Montana Meridian and that said water was then and thereafter used for purposes of irrigation upon plaintiffs' said land.

At the trial plaintiffs introduced in evidence as their exhibit 6 a certified copy of a water right notice reading as follows: "Water right. J. K. Clark and F. H. Woody Claimants. We the undersigned have appropriated and claim all of the water in 'Clarks Creek' in the county of Missoula in Montana Territory. Said water to be taken out at a point two miles above the mouth of said Creek. Said water to be used for mining and other purposes. We further give notice that we claim said water to the entire exclusion of all other claimants whatsoever. Witness our hands on this 25 day of December, A. D. 1869. J. K. Clark F. H. Woody Filed for record on the 25th day of December at 11 o'clock A. M. A. D. 1869 F. H. Woody Co. Recorder."

It will be observed that the foregoing notice contains no description whatever of the land upon which the claimed water was to be used or the time when such water was actually diverted from the stream and applied to a beneficial use if such water was so diverted or applied.

Early mining in the territory of Montana consisted of working surface gravels by placer or hydraulic methods. Water, of course, was required for such mining. The miners developed their own rules regarding the acquiring of mining lands which were then public lands over the use of which the Federal Government exercised little or no control. These customs of the miners also applied to acquiring the necessary water for use in mining. The amount of water which could be obtained was limited to the amount needed for the beneficial purpose for which it was used. The one first using the water had the prior right up to the needs of his use but diligence was required in the construction of the diversion systems and in the continued use of the water to enable the appropriator to preserve his right

to such use. Thus the appropriative principle embodying the essential element of priority sprang from the requirements of the early day miners for their protection and the use of the water which they required for the working of their mines and mining claims. So in the various western states including Montana, the earliest statutes governing the appropriation of waters were enacted long after irrigation development had begun.

Thus it is that we do not find any Montana law as early as December 25, 1869, providing for or expressly authorizing the recording of water right notices such as plaintiffs' exhibit 6, although years later such provisions appeared in section 6, page 131, of the Act of 1885, now section 89-810, R. C. M. 1947.

In Maynard v. Watkins, 55 Mont. 54, 56, 173 Pac. 551, 552, this court held that prior to March 12, 1885, ''The essential elements of an appropriation were a completed ditch and the application of water through it to a beneficial use. Murray v. Tingley, 20 Mont. 260, 50 Pac. 723.''

It will also be observed that the above water right notice, plaintiffs' exhibit 6 states that said water was to be taken out at a point *two miles* above the mouth of said Clarks Creek.

Plaintiffs introduced in evidence as their exhibit 3, a photostatic copy of the government township map of township 20 north of range 26 west, which map is drawn to a scale of one inch equalling 40 chains or one half mile. Such map indicates that the ditch and land claimed by plaintiffs and the other parties to this action are located *more than three miles* to the north and upstream from the mouth of Clarks Creek labelled Lynch Creek on the exhibit.

A careful reading of the transcript on appeal fails to reveal any evidence showing that the lands for which J. K. Clark and F. H. Woody sought to appropriate water were the lands that now belong to plaintiffs or to show that plaintiffs succeeded to the alleged Clark-Woody water right even if it be assumed that plaintiffs did succeed to the Clark-Woody lands. Plaintiffs' exhibit 3 indicates that the Lynch ranch and lands, being those now owned and possessed by plaintiffs are located up stream

some three miles or more from the mouth of Clarks Creek or Lynch Creek, being where such creek empties into the Clarks Fork River so that the point where Clark and Woody state they would take out their water is located a mile or more down stream from any of plaintiffs' lands.

In view of the record herein we cannot say that the trial court erred in finding that the water right notice by Clark and Woody of December 25, 1869, is entirely insufficient to initiate any right and that plaintiffs are not entitled to any water rights by virtue of such notice.

As to the other water rights in said Clarks Creek the court found and in its conclusions of law stated the parties, the amounts of water appropriated, the dates thereof and the stream from which taken, as follows, to-wit: "The plaintiffs, 250 inches, April 18, 1886, from Clarks, or Lynch, Creek; the plaintiffs, 100 inches, July 11, 1904, from Clarks, or Lynch Creek; the plaintiffs, 125 inches, May 24, 1893, from the East Fork of Clarks Creek; the defendants Benedick, 200 inches, in 1888, from the East Fork of Clarks Creek, and they have since acquired and completed adverse rights to the use thereof; the defendants Blair-Blanchard, 25 inches, in 1899, by the Upper Blair Ditch; and 20 inches, in 1901, by the Lower Blair Ditch, all from Cedar Creek (West Fork of Clarks Creek) and they have since acquired and completed adverse rights to the use of all this water."

The decree from which plaintiffs have appealed describes the lands of the respective parties and their water rights according to such findings and conclusions and states: "12. That wherever in this decree reference is made to inches of water, said reference means, and is intended to mean, miners' inches of water; and 40 inches, miners' measure, is equivalent to the flow of one cubic foot per second." The last quoted portion of the decree is in accord with the provisions of section 89-818, R. C. M. 1947.

In Worden v. Alexander, 108 Mont. 208, 213, 90 Pac. (2d) 160, 162, this court said: "In this state there is no statute which

definitely regulates the duty or amount of water reasonably necessary for irrigation, and the rule has generally been observed by our courts, in fixing the amount required for economical use, to allow one inch per acre, unless the evidence discloses that a greater or less amount is required. * * 'The question of the amount of water necessary per acre for irrigation is one of fact for the court or jury, and can never be considered a question of law for the courts.' Tucker v. Missoula Light & Ry. Co., 7 Mont. 91, 250 Pac. 11, 18''. See also Wills v. Morris, 100 Mont. 514, 530, 50 Pac. (2d) 862; Federal Land Bank v. Morris, 112 Mont. 445, 453, 116 Pac. (2d) 1007.

While there is considerable conflict in the evidence as to the character of the lands involved, the amount of water required to properly irrigate the same, the number of acres irrigated by the respective parties and the size and capacity of their ditches, yet there is evidence that some of plaintiffs' lands were wet or swampy land requiring no irrigation and that some of the lands of the defendants were dry, gravelly and non-irrigable. The trial court found that only about 350 acres of the plaintiffs' lands are irrigable. There is evidence that plaintiffs own 480 acres and they were awarded 475 miners' inches of water; that the defendants Benedick owned 240 acres and were awarded 200 miners' inches of water and that the defendants Blair and Blanchard owned 50 acres of land and were awarded 45 miners' inches of water.

Substantial evidence corroborated by several witnesses further shows that the defendants Claude W. Benedick and wife took all the water during the late summer and fall from the east fork of Clarks Creek and used the same each year since September 9, 1921, continuously, openly, notoriously and adversely to the exclusion of all others and to the detriment of plaintiffs; that the defendants Blair and Blanchard and their predecessors in interest have also taken all the waters from Cedar Creek during the late summer and fall for over 20 years and used it continuously, openly, notoriously and adversely to the exclusion

278

of all others and to the detriment of plaintiffs and the court so found in its findings of fact and conclusions of law.

The trial court's decree, based upon such findings and con-clusions, among other things states: "That as against the plaintiffs Stearns, the defendants Claude W. Benedick and Ruth P. Benedick have established by adverse possession a right to the use of 200 inches of the East Fork of Clarks Creek through the ditch above mentioned, and that such right established by adverse possession is superior in priority to any of the rights of the plaintiffs Wesley Stearns and Ruth Stearns, out of Clarks Creek, or any' of the tributaries thereof. * * * With respect to the rights of the defendants Blair and Blanchard, as set out in paragraphs 8 and 9 of this decree, the defendants Blair and Blanchard have established rights to the use of said 25 inches and 20 inches of the waters of Cedar Creek by adverse possession, and that such rights of the defendants Blair and Blanchard, so established by adverse possession, are superior in priority to any of the rights of the plaintiffs Ruth Stearns and Wesley Stearns out of Clarks Creek, or any of the tributaries thereof."

As to the acquiring of title to property by prescription, see section 67-1203, R. C. M. 1947; Custer Consol. Mines Co. v. City of Helena, 52 Mont. 35, 41, 156 Pac. 1090; Glantz v. Gabel, 66 Mont. 134, 141, 212 Pac. 858; Irion v. Hyde, 107 Mont. 84, 88, 81 Pac. (2d) 353 and 1 Wiel on Water Rights (3d Ed.), p. 628, sec. 582.

In Wills v. Morris, 100 Mont. 514, 524, 50 Pac. (2d) 862, 866, a water right case, this court said: "This court will not reverse the findings of the lower court unless the evidence clearly pre-ponderates against them. Anaconda Nat. Bank v. Johnson, 75 Mont. 401, 244 Pac. 141; Warren v. Senecal, 71 Mont. 210, 228 Pac. 71; Allen v. Petrick, 69 Mont. 373, 222 Pac. 451." Also see Missoula Light & Water Co. v. Hughes, 106 Mont. 355, 366, 77 Pac. (2d) 1041; Gibbs v. Gardner, 107 Mont. 76, 80, 80 Pac. (2d) 370.

Finding no prejudicial error in the record before us the decree of the trial court is hereby affirmed.

ASSOCIATE JUSTICES METCALF, BOTTOMLY, ANGSTMAN and FREEBOURN, concur.