FRANCES CURRY, Plaintiff and Respondent, v. GORDON HOVEN et al., Defendants and Appellants.

No. 11989.
Submitted June 11, 1971.
Decided July 23, 1971.
487 P.2d 295.

Tipp, Hoven & Brault, Raymond W. Brault, argued, Missoula, for defendants-appellants.

Morrison & Ettien, Robert D. Morrison, argued, Havre, for plaintiff-respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal by defendants from a judgment entered in the district court of the twelfth judicial district and from an order denying a new trial or in the alternative to amend the findings and conclusions. Plaintiff brought the action to reform a mortgage and to foreclose the reformed mortgage. The reformation of the mortgage was to have it include 110 acres of land, rather than 75 acres; to eliminate a clause which stated that the vendor could not have a deficiency judgment against the vendees in the event of a foreclosure suit; and, to have a certain partial release of the mortgage delivered up and cancelled. The suit sought certain other relief including appointment of a receiver to preserve rents and profits and for attorney fees and costs.

Plaintiff, Frances Curry, acquired the land, some 110 acres, from her parents. One-third as an undivided one-third interest from her father by inheritance and the other two-thirds undivided interest from her mother in the year 1965. At that time, in payment, she delivered to her mother a promissory note for $25,000 for the two-thirds interest; she testified that it was a fair price. Plaintiff lives in California, having moved there from Havre, Montana. She had a 1600 acre farm in Hill County, which she sold. She also had another parcel of property which she sold, and she was involved in several real estate transactions. The 110 acre parcel involved here is undeveloped acreage adjoining the city of Havre. Some of the parcel is rock, barren, and has a high water table, including a pond. Some of it is apparently choice for building sites.

The defendants are three married couples who are partners in a business under the firm name of Heritage Development Association. Hoven is a lawyer, Sinnott a realtor, and Shulund a builder. Sinnott and Shulund were interested in securing title to the 110 acre tract owned by plaintiff. They went to Hoven. Hoven had been plaintiff's lawyer in several transactions for a period of some eight years. The partnership was formed with Mrs. Hoven a named partner, but Mr. Hoven

admitted that he was in fact a partner. Hoven did not contribute any money, but his contribution consisted of securing the land through his contact with plaintiff, his client; and his knowledge of federal financing. Also the plan consisted in part of financing, developing, and annexing the area to the city, and Hoven was active in this.

As to the 110 acres heretofore mentioned, in a series of letters by Hoven to plaintiff introduced as exhibits, and beginning in June 1965 and before the time plaintiff purchased the land from her mother, the desire of plaintiff to sell appears.

In the fourteen letters from June 1965 to June 1968, there appears an interest on the part of plaintiff to sell, and an interest on the part of defendant Hoven to develop the land in a speculative manner to *"our* mutual benefit". A joint enterprise or partnership arrangement between plaintiff and Hoven appeared to be developing. The letters refer to telephone conversations between the correspondents, prices, refusals of offers, and various other things, but one obvious development over the period of three years is a suggestion of development to *"our* mutual benefit". The "our" meaning plaintiff and defendant Hoven; or client and attorney.

Finally, in early July 1968, plaintiff agreed to sell the entire 110 acres for $1,000 per acre paid to plaintiff, with the plaintiff to receive as additional remuneration a 50% share of the profits that Gordon and Madeline Hoven received from their combined interests in Heritage Development Association.

Upon an agreement being reached between the plaintiff and Heritage Development Association, Gordon Hoven prepared a deed and a note and mortgage running from Heritage Development Association in favor of the plaintiff in the amount of $75,000 and pledging 75 acres of land as security for the payment of said note. Hoven also prepared an escrow agreement whereby said Gordon Hoven agreed to act as escrow agent, without pay and several blank partial release forms.

Gordon Hoven took the aforesaid documents, together with

a check in the amount of $35,000 drawn in favor of plaintiff, and flew to California, landing at an airport near the home of plaintiff. Mr. Hoven was met at the airport by plaintiff and her son, who then took Mr. Hoven to plaintiff's home where he remained for nearly two hours. During this two hour interval Mr. Hoven delivered the said check in the amount of $35,000, together with the said note and mortgage in the amount of $75,000 to the plaintiff; plaintiff executed a memorandum agreement to share in the profits of Heritage Development Association with Gordon and Madeline Hoven, and also an escrow receipt.

Thereafter plaintiff cashed the check for $35,000; the original deed in favor of Heritage Development Association covering the entire 110 acres was recorded; the original mortgage in favor of plaintiff, covering 75 acres of land was recorded and returned to plaintiff.

Plaintiff, at all pertinent times, did have in her possession the deed that she received from her mother, and the mortgage given her by Heritage Development Association.

The memorandum agreement heretofore mentioned was in these words:

"For a good and valuable consideration it is hereby agreed by and between Madeline Hoven, Gordon Hoven and Frances Curry that Frances Curry shall receive 50% of any and all profits that Gordon or Madeline Hoven shall receive from the development of a certain tract of land formerly owned by Frances Curry and since sold to Heritage Development Assn."

From this point on there is some dispute about the facts. Defendants maintain that upon payment of the $35,000 they were to receive 35 acres free and clear for development and financing security in the customary manner. On the other hand, plaintiff claims she was defrauded, since the mortgage excluded 35 acres of land; she asserts that the mortgage to her was to have embraced the entire 110 acres which was deeded,

with the $35,000 payment being only a down payment on the entire land sale.

Heritage Development Association made financial arrangements to develop a portion of the 35 acres and surveyed, prepared and filed the necessary plat. It gave bona fide mortgages on part of the platted portion of the 35 acres as security for development loans. Structures have been partly completed on two lots within the 35 acres, the same being lots 6 and 7 of Heritage Village Tract No. 1. In her complaint plaintiff asked that a receiver be appointed as to the lots being developed, but the court did not grant plaintiff's prayer and no issue is presented on appeal concerning this.

In order to dedicate a full width street into the area being developed, Gordon Hoven delivered to Heritage Development Association a partial release of mortgage, releasing a tract of land 14.12 feet wide by 500 feet long, constituting 7,060 square feet of land (0.16 acre) which became the easterly-most portion of the platted street named Elm Drive, as shown on the plat of Heritage Village Tract No. 1. No money was paid to Gordon Hoven for this partial release, and Gordon Hoven likewise paid no money to plaintiff for the partial release. This partial release was duly recorded.

Heritage Development Association did not make the annual payment on the promissory note and plaintiff contacted Gordon Hoven asking him to find out why. When the payment still was not made by August, plaintiff came to Montana to check on it personally. When plaintiff found the aforesaid partial release filed of record, she consulted her present counsel and filed this suit against the named defendants.

Plaintiff never advised Gordon Hoven that he was no longer her attorney prior to the filing and service of this suit. Nor did plaintiff ever advise Hoven that the mortgage given to her was different in any fashion from the mortgage she believed she would get. Neither did the plaintiff ever ask Hoven to rewrite the mortgage, nor to change any terms

therein. Also, plaintiff never inquired of Gordon Hoven the reason for the filing of the partial release, prior to filing this suit.

Gordon Hoven never billed plaintiff for any of his services relating to the sale of plaintiff's land to Heritage Development Association, and plaintiff never paid Hoven any fees for services rendered.

The district court found in favor of plaintiff, reforming the mortgage to cover all 110 acres (except for the two lots sold) rather than 75 acres; declared the partial release of mortgage heretofore mentioned as void; granted attorney fees; found $75,000 with interest due and owing; ordered foreclosure of the reformed mortgage and certain other matters. Judgment was entered on fidings of fact and conclusions of law.

Generally the findings were that plaintiff was a client of Hoven; that although she had full knowledge of Hoven's activities in the partnership of Heritage, she nonetheless was "victimized" by Hoven; and, that because of the relationship as client and attorney Hoven exercised undue influence in persuading plaintiff to enter into the transaction. Further, that plaintiff did not understand the documents she signed and if she had, would not have signed them.

Essentially the defendants urge that the evidence does not support the trial court's findings and that the written documents control.

Plaintiff relies on the attorney-client relationship existing between plaintiff and defendant Hoven; that Hoven's actions were the actions of the partnership, Heritage; and, asserts the rule to the effect that dealings between attorney and client are presumptively fraudulent and will be closely scrutinized. See 7 C.J.S. Attorney and Client §§ 127, 128, pp. 968-970 and 7 Am.Jur.2d, Attorneys at Law § 97. Plaintiff's position is that the burden of proof was on defendants to show that the dealings were fair, reasonable, and fully understood by plaintiff and that defendants failed in this burden.

This being an equity case, section 93-216, R.C.M.1947, provides that:

"* * * In equity cases * * * the supreme court shall review all questions of fact arising upon the evidence presented in the record * * *".

See White v. Nollmeyer, 151 Mont. 387, 443 P.2d 873 and cases cited therein.

The rule on review of findings in an equity case has been stated variously, but for our purpose here this Court, speaking through Mr. Justice Angstman in 1941, in Sanders v. Lucas, 111 Mont. 599, 602, 111 P.2d 1041, stated it thusly:

"In reviewing the evidence, we keep in mind that we have the authority under section 8805, Revised Codes, to review all questions of fact, and that, if the evidence is not conflicting or if the conflict is trifling or unsubstantial, or if the evidence decidedly preponderates against the findings, we have the right to make our own conclusions. State ex rel. Nagle v. Naughton, 103 Mont. 306, 63 P.2d 123. However, where there is substantial evidence to support the findings, even though the evidence be conflicting, we will not interfere with the judgment and findings of the trial court. While we have the right to determine whether the findings are supported by a preponderance of the evidence (Gibbs v. Gardner, 107 Mont. 76, 80 P.2d 370; Dalbey v. Equitable Life Assurance Society of United States, 105 Mont. 587, 74 P.2d 432; H. Earl Clack Co. v. Oltesvig, 104 Mont. 255, 68 P.2d 586; Missoula Light & Water Co. v. Hughes, 106 Mont. 355, 77 P.2d 1041), yet we cannot say that the evidence decidedly preponderates against the findings when there is substantial evidence supporting them. Hence, our province is but to ascertain whether there is any substantial evidence to support the findings and conclusions of the trial court."

*Sanders* involved an attorney-client relationship. This Court affirmed the trial court's judgment in favor of the client. Later, in In re McDonald, 112 Mont. 129, 113 P.2d 790, the attorney was disbarred.

With this rule in mind, we review the findings to determine whether there is substantial evidence to support the findings. These facts are clear:

(1)   Plaintiff had full knowledge of defendant Hoven's connections with Heritage.

(2)   Plaintiff holds a responsible position, has experience in real estate transactions, and obviously is intelligent.

(3)   Defendant Hoven over a period of three years proposed partnerships or joint ventures between himself and plaintiff in land development ventures, clearly speculative in nature. Plaintiff after turning down various proposals, accepted this proposal.

(4)   The price paid, $1,000 per acre with an additional half of the expected profits of Hoven, was not grossly unfair or unrealistic.

(5)   Plaintiff, under repeated questions, could not and did not testify to *any* fraudulent representations by Hoven. Neither was plaintiff ever misinformed.

(6)   Plaintiff and Hoven agreed to share expected profits.

The district court's findings were similar to the findings proposed by plaintiff except that, significantly, all references to fraudulent misrepresentations were carefully deleted. The principal conclusion of law involved in this discussion is conclusion No. 3 as follows:

"That because of the attorney-client relationship between plaintiff and defendant Gordon Hoven, the conduct of said defendant as set forth in the findings of fact constitutes fraud and undue influence on the plaintiff."

The conduct of the defendant set forth in the findings of fact concerning the sale of the property was essentially:

"*   *   *   that although plaintiff at all such times knew that said defendants were members of the partnership, she continued to place her trust and confidence in defendant Gordon Hoven and relied upon him to protect her interests as her counsel; that said defendant Gordon Hoven prepared the

deed abovementioned and also prepared the mortgage described in the complaint and other related documents. That said defendant failed to explain and make clear to plaintiff the terms, nature and effect of said mortgage, which defendants executed in favor of plaintiff as security for payment of the purchase price of said property, as a result of which plaintiff believed that said mortgage included a lien upon all of the real property described above when in fact said mortgage excluded a substantial and material portion of said property."

It is seen then that the thrust of the findings on undue influence, which became fraud and undue influence in the conclusions of law, was that Hoven "failed to explain and make clear to plaintiff the terms, nature and effect of said mortgage * * *".

The language of the mortgage was not hidden, plaintiff had it at all times. The prior proposals of a partnership in development and of a sharing of expected profits reveal full understanding of the proposal. The only possible lack of understanding on the part of plaintiff was the extent of her lien; that is, whether it covered 75 acres as described or 110 acres.

Yet, while plaintiff did testify at one point that Hoven told her the mortgage covered all 110 acres, at another point and several times she repeated the assertion that Hoven discussed nothing about the mortgage. She asserted Hoven said: "all these papers were necessary for my protection, that he was representing me."

Keeping in mind it was only later, when the expected payment on the note and the anticipated profit did not occur, that plaintiff first asserted any lack of understanding, we cannot find, without more, that a mere lack of explanation on the part of an attorney can constitute fraud and undue influence. Here, we do not have ignorance, lack of education or understanding of the English language, misstatements, secretive actions or any of the usual badges of bad faith. Rather, we have a simple finding of "failure to explain". There is

simply no credible evidence to support a finding of any misrepresentation.

Heretofore we set forth the fact that plaintiff bought two-thirds of the 110 acres for $25,000, on a note, from her mother in 1965. Then, in 1968 she sold the land for $110,000 plus her partnership interest in expected profits. Can it be fairly said that the price was unconscionable? Plaintiff asserts testimony of Shulund that he paid $2,000 per acre for adjacent land shows that the value of $1,000 an acre (forgetting the expected profit) was evidence the price was unconscionable. However, Shulund testified that on the 2 adjacent acres he purchased, there were 12 building sites with sewer mains to 10 sites and water mains to 5 sites. There were *no* improvements on the 110 acres involved here.

We have examined the entire record, including the depositions and exhibits and do not find credible evidence to support the finding that undue influence was exercised. On the contrary, we find that defendant Hoven did carry his burden of showing an arms-length transaction. Plaintiff's and Hoven's copartnership did not prove profitable in a short time, *but* many speculative ventures do not pan out. This does not give rise to a finding of fraud or undue influence in using hindsight.

So far we have discussed the facts, and findings and conclusions without reference to two other matters. In the mortgage prepared by Hoven and signed by plaintiff appears a clause which recited that no deficiency judgment could be had. This is the effect of section 93-6008, R.C.M.1947. Significantly, the brief of respondent does not argue this point as being a badge of fraud or misrepresentation. We shall not dwell on it.

Also, we have discussed the case on the original transaction without particular reference to the partial release of mortgage.

At the same time, July 15, plaintiff signed partial releases in blank and gave them to Hoven, as escrow holder. Hoven's authority to deliver this partial release was only upon his receipt of payment of at least $5,000 for each 5 acres released. Hoven delivered one partial release to the defendant partnership without having received any payment thereon. The partial release was one to dedicate a full width street in the area being developed. It released a tract of land 14.12 feet wide by 500 feet long, containing 0.16 acre. It was named Elm Drive in Heritage Village Tract No. 1.

It is clear that the partial release was given in good faith in furtherance of plaintiff and defendant Hoven's partnership plan to develop the acreage. But it is equally clear that it was not within Hoven's written authority. This partial release was found by the trial court to be void. It is not clear what effect the partial release would have on rights of purchasers of the two lots previously mentioned. Accordingly we do not affirm this part of the judgment but return the matter to the district court for consideration.

The respondent, plaintiff Curry, makes much of this action by Hoven in delivering this partial release outside of his written authority, as being an act of fraud. However, in the context of the entire transaction, this partial release of 0.16 acre for access does not measure up to a fradulent act. Mistaken, surely, but fraud—no.

In viewing the matter overall, plaintiff was a copartner with Hoven, willingly and knowingly; perhaps in retrospect, mistakenly; but nonetheless a speculator and developer along with the rest. The findings that the $75,000 was due and owing and that attorney fees and costs were due and owing are supported by the record and are not challenged here.

Accordingly, we reverse that part of the judgment reforming the mortgage and return the cause to the district court

for the purpose of entering judgment in conformity with what has been said herein.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES HASWELL and JOHN C. HARRISON, concur.

MR. JUSTICE DALY, deeming himself disqualified did not participate in this opinion.